UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION, | ) ) ) ) |
| Petitioner, | ) No. 1:24-mc-40-CLC-SKL |
| v. | ) ) |
| IT IS WRITTEN, INC., | ) ) ) |
| Respondent. | ) ) ) |

PETITIONER THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION'S
MOTION TO COMPEL
RESPONDENT IT IS WRITTEN, INC. TO COMPLY WITH SUBPOENA AND
OPENING BRIEF IN SUPPORT

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

LEGAL STANDARDS ...................................................................................................................4

    I.       SUBPOENA AUTHORITY ...........................................................................................4

    II.      TRADEMARK PRINCIPLES .......................................................................................5

ARGUMENT ...................................................................................................................................6

    I.       THE COURT SHOULD COMPEL RESPONDENT TO COMPLY WITH DSDAA'S SUBPOENA .....................................................................................................................6

        A.    DSDAA's Subpoena Seeks Highly Relevant Information and Is Appropriately Tailored to Address the Issues Raised in the Cancellation Proceeding. ..........................................7

        B.    DSDAA's Subpoena Does Not Violate the "Neutral Principles of Law" Approach to Adjudication of Trademark Disputes. ...................................................................................9

CONCLUSION ..............................................................................................................................11

# TABLE OF AUTHORITIES

Cases

*AWGI, LLC v. Atlas Trucking, LLC*, 998 F.3d 258 (6th Cir. 2021)...................................5

*El Encanto, Inc. v. Hatch Chile Co., Inc.*, 825 F.3d 1161 (10th Cir. 2016) ......................4

*Frilette v. Barnes*, 508 F.2d 205 (3d Cir. Dec. 16, 1974)..............................................5, 7

*General Conference of Seventh-Day Adventists v. McGill*, 617 F.3d 402 (6th Cir. 2010)...3, 9, 10, 11

*Haymaker Sports, Inc. v. Turian*, 581 F.2d 257 (C.C.P.A. 1978) ..................................6, 8

*Jones v. Wolf*, 443 U.S. 595 (1979) ..................................................................................10

*Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334 (Fed. Cir. 2015) ..............5, 6, 8

*Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244 (9th Cir. 1999)....3, 10, 11

*Osborne v. Google*, No. 18-MC-40, 2019 U.S. Dist. LEXIS 3149 (W.D.N.C. Jan. 7, 2019).........4

*Progressive Distrib. Servs. v. UPS, Inc.*, 856 F.3d 416 (6th Cir. 2017).........................5, 7

*Rosenruist-Gestao E Servicos LDA v. Virgin Enters.*, 511 F.3d 437 (4th Cir. 2007) .................4, 7

*Univ. of Tennessee Rsch. Found. v. Caelum Biosciences, Inc.*, No. 19-CV-508, 2022 U.S. Dist. LEXIS 241010 (E.D. Tenn. Jul. 1, 2022) ................................................................5, 7, 9

*Yellowbook Inc. v. Brandeberry*, 708 F.3d 837 (6th Cir. 2013) ...................................6, 8

Statutes

15 U.S.C. § 1064...................................................................................................................5

35 U.S.C. § 24..............................................................................................................4, 7, 10

Other Authorities

*Cordell & Cordell, P.C. v. Schultz & Assocs., LLC*, Cancellation No. 92072315, 2021 TTAB LEXIS 460 (TTAB Nov. 23, 2021) ............................................................................................. 5

*Viacom Int'l, Inc. v. Armstrong Interactive, Inc.*, Opposition No. 91243941, 2022 TTAB LEXIS 115 (TTAB Mar. 11, 2022) .......................................................................................... 6, 8

*Zoba Int'l Corp. v. DVD Format/Logo Licensing Corp.*, Cancellation No. 92051821, 2011 TTAB LEXIS 69 (TTAB Mar. 10, 2011) ............................................................................. 6, 8

Rules

FED. R. CIV. P. 45 ............................................................................................................... 4, 7

Petitioner The Davidian Seventh-day Adventist Association ("DSDAA" or "Petitioner"), by and through its undersigned counsel, pursuant to 35 U.S.C. § 24 and Fed. R. Civ. P. 45, hereby moves this Court to order compliance with a duly issued subpoena, and submits this Opening Brief in Support of Petitioner's Motion to Compel Respondent It Is Written, Inc. ("Respondent") to Comply With Subpoena. For the reasons discussed herein, DSDAA respectfully submits that its Motion should be granted and Respondent should be compelled to comply with DSDAA's subpoena.

## PRELIMINARY STATEMENT

This matter comes before the Court on motion by DSDAA to compel Respondent to comply with a subpoena validly issued by the Clerk of this Court in connection with a contested case currently pending before the Trademark Trial and Appeal Board ("TTAB") of the U.S. Patent and Trademark Office, filed by General Conference Corporation of Seventh-day Adventists ("GCCSDA") on December 2, 2021. In that case, GCCSDA seeks cancellation of DSDAA's federal registration for the mark THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION, in part, on grounds of priority and likelihood of confusion with respect to GCCSDA's alleged marks SEVENTH-DAY ADVENTIST and GENERAL CONFERENCE OF SEVENTH-DAY ADVENTISTS (the "SEVENTH-DAY ADVENTIST Marks").

Respondent, a third-party user of GCCSDA's alleged marks, has refused to respond to key aspects of DSDAA's subpoena, which seeks, in part, documents and testimony concerning the biblical, moral, doctrinal, and social philosophies and teachings of Respondent, and the practices that Respondent endorses or condones, and those that Respondent does not. This information is highly relevant to the issues raised in the underlying dispute between DSDAA and GCCSDA, in that Respondent's use of GCCSDA's alleged marks in a manner inconsistent with the use of such

marks by GCCSDA is both likely to weaken the strength of GCCSDA's marks, and may indicate abandonment of such marks by GCCSDA. DSDAA's subpoena is thus appropriately tailored to seek information critical to the underlying dispute between GCCSDA and DSDAA. Moreover, the subpoena does not violate the "neutral principles of law" approach to the adjudication of trademark disputes between religious entities, because it does not require the Court to decide any question of religious doctrine.

In short, DSDAA's subpoena was validly issued by the Clerk of this Court and meets all of the requirements of law. Respondent's refusal to comply is baseless, and the Court should compel compliance.

**FACTUAL BACKGROUND**

On December 2, 2021, GCCSDA initiated Cancellation Proceeding No. 92078546 (the "Cancellation Proceeding") before the TTAB, seeking to cancel DSDAA's U.S. Registration No. 6,540,553 for the mark THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION ("DSDAA's Mark"). (*See* Exhibit A (Original Petition for Cancellation)). Among other claims, GCCSDA alleges that the Subject Mark is likely to cause confusion with respect to the SEVENTH DAY ADVENTIST Marks. (*See id.*). Discovery is currently set to close in the Cancellation Proceeding on December 10, 2024. (*See* Exhibit B (Jul. 23, 2024 Scheduling Order)).

On April 24, 2024, DSDAA issued a subpoena, signed by the Clerk of this Court, to Respondent. (*See* Exhibit C (Subpoena)). The subpoena commanded Respondent to appear for a deposition and produce certain documents concerning, among other things, Respondent's use of the SEVENTH-DAY ADVENTIST Marks. (*See id.*). On May 10, 2024, Respondent served its responses and objections to DSDAA's subpoena. (*See* Exhibit D (Responses and Objections)). Shortly thereafter, DSDAA sent Respondent correspondence explaining the basis for its requests

and offering to narrow some of the requests in a good faith effort to resolve any potential disputes. (*See* Exhibit E (May 15, 2023 Ltr. from Chiacchio to Jackson)). The parties conducted a telephonic meet-and-confer on June 6, 2024. (*See* Exhibit F (Jun. 17, 2024 Email from Chiacchio to Jackson)).

Following the June 6, 2024, meet-and-confer, DSDAA explained that, as narrowed, Request for Production Nos. 2 and 3 in the subpoena were intended to capture "documents sufficient to demonstrate the biblical, moral, doctrinal, and social philosophies and teachings of [Respondent], and the practices that [Respondent] endorse[s] or condone[s], and those that [Respondent] does not." (*See id.*). On June 25, 2024, Respondent reiterated its refusal to produce such documents, citing *General Conference of Seventh-Day Adventists v. McGill*, 617 F.3d 402 (6th Cir. 2010) and *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244 (9th Cir. 1999) for the proposition that "courts may apply neutral principles of law to resolve church property disputes," and cannot "resolve underlying doctrinal disputes." (*See* Exhibit G (June 25, 2024 Ltr. from Jackson to Chiacchio)).

On July 1, 2024, DSDAA responded to Respondent's letter, noting that the cases cited by Respondent were "curious" considering that in both cases the Court held that the so-called "neutral principles of law" approach did not prevent adjudication of the underlying trademark dispute. (*See* Exhibit H (Jul. 1, 2024 Ltr. from Chiacchio to Jackson)). DSDAA further explained that "the relevance of the requested information to the Board proceeding is that such information will support the undeniable proposition that a number of [Respondent's] philosophies, teachings, and practices are directly contrary to those held by the General Conference of Seventh-day Adventists and other denominational entities," which "bears directly on the validity" of the SEVENTH-DAY

3

ADVENTIST Marks. (*See id.*) DSDAA also noted that "[n]either the Board nor any other adjudicative tribunal will be asked to decide a doctrinal issue." (*See id.*)

On July 5, 2024, Respondent maintained its refusal to search for documents sufficient to demonstrate the biblical, moral, doctrinal, and social philosophies and teachings of Respondent, and the practices that Respondent endorses or condones, and those that Respondent does not. (*See* Exhibit I (Jul. 5, 2024 Ltr. from Jackson to Chiacchio)). In a final effort to resolve the parties' dispute, DSDAA offered to withdraw the request for documents, provided that Respondent agree to put forth a witness to testify as to the information sought. (*See* Exhibit J (Jul. 9, 2024 Ltr. from Chiacchio to Jackson)). On July 11, 2024, Respondent refused DSDAA's offer. (*See* Exhibit K (Jul. 11, 2024 Ltr. from Jackson to Chiacchio)). The instant Motion follows shortly thereafter.

## **LEGAL STANDARDS**

### I. **SUBPOENA AUTHORITY**

35 U.S.C. § 24 provides that "[t]he clerk of any United States court for the district wherein testimony is to be taken for use in any contested case in the Patent and Trademark Office, shall, upon the application of any party thereto, issue a subpoena . . . ." 35 U.S.C. § 24. "This section has been interpreted to allow a party to a TTAB proceeding to obtain documents, as well as depositions, from third parties under Rule 45" of the Federal Rules of Civil Procedure. *Osborne v. Google*, No. 18-MC-40, 2019 U.S. Dist. LEXIS 3149, at *3-4 (W.D.N.C. Jan. 7, 2019) (citing *El Encanto, Inc. v. Hatch Chile Co.*, 825 F.3d 1161 (10th Cir. 2016)); *see also* FED. R. CIV. P. 45. Under 35 U.S.C. § 24, the district courts are assigned "the limited function in contested PTO matters of 'issu[ing] and enforce[ing] subpoenas in connection with the preparation of evidence for submission' to the administrative tribunal." *Rosenruist-Gestao E Servicos LDA v. Virgin Enters.*, 511 F.3d 437, 444 (4th Cir. 2007) (quoting *Frilette v. Barnes*, 508 F.2d 205, 209 (3d Cir.

1974)). The "scope of discovery under a subpoena is the same as the scope of discovery under Rule 26" of the Federal Rules, which is "traditionally quite broad." *Univ. of Tennessee Rsch. Found. v. Caelum Biosciences, Inc.*, No. 19-CV-508, 2022 U.S. Dist. LEXIS 241010, at *7-8 (E.D. Tenn. Jul. 1, 2022).

## II. TRADEMARK PRINCIPLES

Under 15 U.S.C. § 1064, "[a] party claiming prior use of a mark may petition to cancel a registration on the basis of such prior use," in which case, the party claiming prior use must establish a likelihood of confusion between the party's mark and the registered mark. *See, e.g., Cordell & Cordell, P.C. v. Schultz & Assocs., LLC*, Cancellation No. 92072315, 2021 TTAB LEXIS 460, at *32 (TTAB Nov. 23, 2021). Courts in the Sixth Circuit consider eight factors in determining whether there is a likelihood of confusion, including (i) the strength of the plaintiff's mark, (ii) the relatedness of the parties goods or services, (iii) the similarity of the marks, (iv) evidence of actual confusion, (v) the marketing channels used by the parties, (vi) the likely degree of purchaser care, (vii) the defendant's intent in selecting the mark, and (viii) the likelihood of expansion of the product lines or services. *AWGI, LLC v. Atlas Trucking, LLC*, 998 F.3d 258, 264 (6th Cir. 2021); *see also Progressive Distrib. Servs. v. UPS, Inc.*, 856 F.3d 416, 424-425 (6th Cir. 2017). Similarly, the TTAB and its reviewing court, the Court of Appeals for the Federal Circuit, consider a "non-exhaustive listing of thirteen considerations," including those set forth above. *See Juice Generation, Inc. v. GS Enters. LLC*, 794 F.3d 1334, 1336-1337 (Fed. Cir. 2015).

A party may "show that a mark is not distinctive by presenting evidence of extensive third party use of similar marks," in which case, there is a presumption "that the third parties have muddled the mark's source." *Progressive*, 856 F.3d at 429. This "weakens a mark because the mark is not an identifier for a single source," thus lessening the strength of the mark and the

5

potential for a likelihood of confusion. *See id.* Indeed, "evidence of third-party use bears on the strength or weakness of an opposer's mark." *Juice Generation*, 794 F.3d at 1338. Additionally, "under trademark law, where a licensor does not exercise reasonable quality control over a licensee, the mark is deemed abandoned due to the 'naked licensing.'" *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 846 (6th Cir. 2013); *see also Haymaker Sports, Inc. v. Turian*, 581 F.2d 257, 261 (C.C.P.A. 1978) ("A licensor may license his mark if the licensing agreement provides for adequate control by the licensor over the quality of goods or services produced under the mark by a licensee . . . Uncontrolled licensing of a mark results in abandonment of the mark by the licensor."). Likewise, "[f]ailure to police third-parties' use of a mark could cause it to become generic or otherwise lose its significance as a mark." *Viacom Int'l, Inc. v. Armstrong Interactive, Inc.*, Opposition No. 91243941, 2022 TTAB LEXIS 115, at *83 (TTAB Mar. 11, 2022); *accord Zoba Int'l Corp. v. DVD Format/Logo Licensing Corp.*, Cancellation No. 92051821, 2011 TTAB LEXIS 69, at *10-12 (TTAB Mar. 10, 2011).

## ARGUMENT

### I. THE COURT SHOULD COMPEL RESPONDENT TO COMPLY WITH DSDAA'S SUBPOENA

DSDAA respectfully submits that the Court should compel Respondent to comply with DSDAA's subpoena, which was validly issued by the Clerk of this Court on April 24, 2024. *First*, DSDAA's subpoena seeks information highly relevant to the underlying Cancellation Proceeding between DSDAA and GCCSDA, and is appropriately tailored to address issues raised in the Cancellation Proceeding. As such, the subpoena imposes no undue burden on Respondent, and this Court has the duty to enforce it. *Second*, the subpoena does not violate the "neutral principles of law" approach to the adjudication of trademark disputes, at least because enforcement of the subpoena does not require this Court to decide any issue of religious doctrine. For at least these

6

Case 1:24-mc-00040-CLC-SKL   Document 1   Filed 08/21/24   Page 10 of 16   PageID #: 10

reasons, Respondent's refusal to comply with the subpoena is unjustified, and the Court should compel Respondent to comply.

### A. DSDAA's Subpoena Seeks Highly Relevant Information and Is Appropriately Tailored to Address the Issues Raised in the Cancellation Proceeding.

At the outset, this Court possesses the authority to enforce DSDAA's subpoena. Indeed, under 35 U.S.C. § 24, the district courts are tasked with "'issu[ing] and enforce[ing] subpoenas in connection with the preparation of evidence for submission'" in TTAB proceedings, such as the underlying Cancellation Proceeding between DSDAA and GCCSDA. *See Rosenruist-Gestao*, 511 F.3d at 444 (quoting *Frilette*, 508 F.2d at 209). Moreover, because DSDAA's subpoena is appropriately tailored to seek highly relevant information that fits comfortably within the "traditionally quite broad" scope of discovery, there can be little debate that Respondent is under a legal duty to comply. *See Caelum Biosciences*, 2022 U.S. Dist. LEXIS 241010, at *7-8; *see also* FED. R. CIV. P. 45.

In determining whether to compel compliance with a subpoena, courts in the Sixth Circuit "balance the need for discovery against the burden imposed on the person ordered to produce documents . . . ." *Id.* at *8. Under even the most exacting review, DSDAA's subpoena readily satisfies this standard. DSDAA's subpoena seeks information concerning the use of the SEVENTH-DAY ADVENTIST Marks by Respondent, in a manner inconsistent with the use of the SEVENTH-DAY ADVENTIST Marks by GCCSDA, which is directly relevant to DSDAA's defenses in the Cancellation Proceeding, including no likelihood of confusion. Indeed, it is well established that where a third party, such as Respondent, uses another's mark, there is a presumption that the third party has "muddled the mark's source." *See Progressive*, 856 F.3d at 429. Because third-party use "weakens a mark," such use lessens the strength of the mark, thereby decreasing the potential for a likelihood of confusion. *See id.*

In *Juice Generation*, for example, the Court of Appeals for the Federal Circuit reversed a decision of the TTAB where the Board "gave inadequate consideration to the strength or weakness" of the relevant mark by failing to "adequately account for the apparent force" of "evidence of third-party marks." 794 F.3d at 1339-1340. The evidence of third-party use, the Federal Circuit observed, was "powerful on its face." *Id.* at 1339. And, "[a] proper likelihood-of-confusion inquiry requires" consideration of third-party use of the relevant mark. *See id.* at 1339-1340. Thus, there can be little debate that Respondent's use of the SEVENTH-DAY ADVENTIST Marks is relevant to DSDAA's defense against GCCSDA's allegations of likelihood of confusion in the underlying Cancellation Proceeding.

Respondent's use of the SEVENTH-DAY ADVENTIST Marks to espouse philosophies, teachings, and practices that are directly contrary to those held by GCCSDA is also evidence that GCCSDA has abandoned the SEVENTH-DAY ADVENTIST Marks. "[U]nder trademark law, where a licensor does not exercise reasonable quality control over a licensee, the mark is deemed abandoned due to the 'naked licensing.'" *Yellowbook*, 708 F.3d at 846. Indeed, "[u]ncontrolled licensing of a mark results in abandonment of the mark by the licensor." *Haymaker*, 581 F.2d at 261. And, "[f]ailure to police third-parties' use of a mark could cause it to become generic or otherwise lose its significance as a mark." *Viacom*, 2022 TTAB LEXIS 115, at *83.

In a precedential decision in *Zoba*, for example, the TTAB declined to dismiss a complaint for abandonment where the petitioner alleged "uncontrolled licensing" and "failure to police." 2011 TTAB LEXIS 69, at *10-12. The TTAB noted that "[i]n asserting a claim of abandonment by a licensor, the pleading must set forth facts as to the registrant's conduct, that is, acts of commission or omission which have caused the mark to become the generic name for the goods or services on or in connection with which it is used or otherwise to lose its significance as a mark."

*Id.* at *10. Additionally, the TTAB observed that a petitioner may claim abandonment because the mark "has been so commonly used by others as to have lost its significance as an indication of origin," or because a "licensor retains insufficient quality control or supervision over the use of the mark by the licensees." *Id.* at *10-11. This is precisely what DSDAA seeks to prove as to GCCSDA's SEVENTH-DAY ADVENTIST Marks, based on Respondent's, and thousands of other similarity situated entities', uncontrolled and unsupervised use of such marks. Thus, DSDAA's request for documents and testimony concerning the biblical, moral, doctrinal, and social philosophies and teachings of Respondent, which are undeniably contrary to those of GCCSDA, seeks plainly relevant information.

Finally, DSDAA's subpoena imposes no undue burden on Respondent. "In determining whether a subpoena subjects the non-party to an undue burden, courts consider whether the information can be obtained from a more convenient source, including the parties." *See Caelum Biosciences*, 2022 U.S. Dist. LEXIS 241010, at *7. There can be little debate that the information sought – concerning Respondent's biblical, moral, doctrinal, and social philosophies and teachings – is uniquely within the possession of Respondent. DSDAA cannot obtain this information from a more convenient source, thus demonstrating a lack of undue burden. Moreover, for the reasons set forth *infra* Section B, enforcement of DSDAA's subpoena will impose no burden upon Respondent's First Amendment rights. Accordingly, the Court should compel Respondent to comply.

 **B.** **DSDAA's Subpoena Does Not Violate the "Neutral Principles of Law" Approach to Adjudication of Trademark Disputes.**

Respondent's principal objection to DSDAA's subpoena is that "[t]here is no legal basis" to require Respondent to produce documents or a witness in relation to "doctrinal/theological subject matter." (*See* Exhibit K). This position, purportedly based on the opinions in *McGill* and

9

*Maktab*, is meritless. As set forth in the parties' prior correspondence, and as further explained below, neither *McGill* nor *Maktab* foreclose the discovery DSDAA seeks in this action. In fact, far from supporting Respondent's objections, these cases actually require compliance with DSDAA's subpoena. As such, the Court should compel Respondent to comply.

In *McGill*, the plaintiff alleged that the defendant infringed the plaintiff's trademarks in advertising and promoting a "breakaway church." 617 F.3d at 404. The defendant argued that "the court lacked subject matter jurisdiction because it could not decide the intellectual-property issue without resolving an underlying dispute over religious doctrine." *Id.* at 406. The Court of Appeals for the Sixth Circuit rejected this argument, holding that "courts may apply 'neutral principles of law' to resolve church property disputes." *Id.* at 408 (citing *Jones v. Wolf*, 443 U.S. 595, 604 (1979)). As in *McGill*, the instant dispute requires only the application of "neutral principles of law." *See id.* DSDAA does not ask this Court to decide an "underlying dispute over religious doctrine." *Cf. id.* Rather, DSDAA asks this Court to enforce compliance with a validly issued subpoena, in accordance with Rule 45 and 35 U.S.C. § 24, for the valid purpose of assisting DSDAA in obtaining discovery necessary for its defenses and counterclaims in the Cancellation Proceeding.

Respondent cites to no authority for the bold assertion that the mere fact that a subpoena requests documents and testimony concerning the biblical, moral, doctrinal, and social philosophies of a religious organization, and the practices that the religious organization endorses or condones, violates the First Amendment. Indeed, for at least the reasons set forth above, *McGill* supplies no support for any such assertion. Nor does *Maktab*, also relied upon by Respondent, which expressly held that a defendant in a trademark matter, like DSDAA in the Cancellation Proceeding, "can raise neutral defenses, such as prior use of the marks," or any other traditional

10

defense to an allegation of likelihood of confusion. 179 F.3d at 1249; *see also McGill*, 617 F.3d at 408. Indeed, "to determine these issues" neither this Court, nor the TTAB, will have any "need to decide" any "matter of religious doctrine." *Maktab*, 179 F.3d at 1249-1250. Rather, as explained in further detail in Section A *supra*, the documentary and testimonial evidence sought will be used for the neutral purpose of rebutting GCCSDA's allegations of likelihood of confusion and challenging the validity of the SEVENTH-DAY ADVENTIST Marks, using neutral principles of law.

Because Respondent has provided no authority supporting its position that it need not provide documentary and testimonial evidence concerning its biblical, moral, doctrinal, and social philosophies, and the practices that it endorses or condones, DSDAA respectfully submits that the Court should compel Respondent to provide such information.

## CONCLUSION

For the reasons given herein, DSDAA respectfully requests that the Court grant its Motion to Compel Respondent to Comply with Subpoena.

Respectfully submitted,

**CHIACCHIO IP, LLC**

/s/ Theodore J. Chiacchio
Theodore J. Chiacchio (Bar No. 6332547)
**CHIACCHIO IP, LLC**
307 North Michigan Avenue, Suite 806
Chicago, Illinois 60601
Tel: (312) 815-2384
Email: tchiacchio@chiacchioip.com
*Counsel for Petitioner*
*The Davidian Seventh-day Adventist Association*

11

GRANT KONVALINKA & HARRISON, P.C.

_(signature)_

Mathew D. Brownfield TN BPR #010921
633 Chestnut Street, Suite 900
Chattanooga, TN 37450
Telephone: (423) 756-8400
Facsimile: (423) 756-6518
mbrownfield@gkhpc.com
*Counsel for Petitioner*
*The Davidian Seventh-day Adventist Association*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2024, I caused a true and correct copy of the foregoing document to be served on Respondent's counsel via email and United States Postal Service to following:

John G. Jackson
Chambliss, Bahner & Stophel, P.C
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
jjackson@chamblisslaw

August 21, 2024                                           _(signature)_

12