# EXHIBIT A

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

# Petition for Cancellation

Notice is hereby given that the following party has filed a petition to cancel the registration indicated below.

## Petitioner Information

| Name | General Conference Corporation of Seventh-day Adventists | | |
|---|---|---|---|
| Entity | Corporation | Citizenship | District of Columbia |
| Address | 12501 OLD COLUMBIA PIKE SILVER SPRING, MD 20904 UNITED STATES | | |

| | |
|---|---|
| Attorney information | BASSAM N. IBRAHIM BUCHANAN INGERSOLL & ROONEY, PC 1737 KING STREET, SUITE 500 ALEXANDRIA, VA 22314 UNITED STATES Primary Email: bassam.ibrahim@bipc.com No phone number provided. |
| Docket Number | 1034138-1169 |

## Registration Subject to Cancellation

| Registration No. | 6540553 | Registration date | 10/26/2021 |
|---|---|---|---|
| Registrant | The Davidian Seventh-day Adventist Association 20412 FARM ROAD 1025 EXETER, MO 65647 UNITED STATES | | |

## Goods/Services Subject to Cancellation

Class 009. First Use: 2019/11/10 First Use In Commerce: 2019/11/10
All goods and services in the class are subject to cancellation, namely: Audio and video recordings featuring information on religion, history, religious history, Christian living, health, andBible prophecy; Electronic publications, namely, books, articles, pamphlets, presentation slides featuring information on religion, history, religious history,Christian living, health, and Bible prophecy recorded on computer media; Video recordings featuring information on religion, history, religious history, Christian living, health, and Bible prophecy; Visual and audio recordings featuring information on religion, history, religious history,Christian living, health, andBible prophecy; Audio books in the field of religion, history, religious history, Christian living, health, and Bible prophecy; Audio recordings featuring information on religion, history, religious history, Christian living, health, and Bible prophecy; Digital materials, namely, CDs, DVDs, and downloadable Audio Files featuring information on religion, history, religious history, religious history, Christian living, health, and Bible prophecy; Downloadable e-books in the field of religion, history, religious history, Christian living, health, and Bible prophecy; Downloadable electronic books in the field of religion, history, religious history, Christian living, health, and Bible prophecy; Downloadable multimedia file containing audio relating to religion, history, religious history, Christian living, health, and Bible prophecy; Downloadable multimedia file containing video relating to religion, history, religious history, Christian living, health, and Bible prophecy; Downloadable video recordings featur-

ing information on religion, history, religious history, Christian living, health, and Bible prophecy; E-books featuring information on religion, history, religious history, Christian living, health, and Bible prophecy recorded on computer media; Electronic books featuring information on religion, history, religious history, Christian living, health, and Bible prophecy recorded on computer media

Class 016. First Use: 1966/05/27 First Use In Commerce: 1966/05/27
All goods and services in the class are subject to cancellation, namely: Printed pamphlets, brochures, manuals, books, booklets, leaflets, informationalflyers, informational sheets and newsletters, adhesive backed stickers, and kits comprised solely of one or more of theforegoing materials in the field of religion, history, religious history, Christian living, health, and Bible prophecy;Books in the field of religion, history, religious history, Christian living, health, and Bible prophecy; Religious books; Flip books; Hymn books; Index books;Song books; Charts in the field of religion, history, religious history, Christian living, health, and Bible prophecy

Class 045. First Use: 1965/10/20 First Use In Commerce: 1965/10/20
All goods and services in the class are subject to cancellation, namely: Conducting religious ceremonies; Ecclesiastical services, namely, ordaining ministers to perform religious ceremonies; Ministerial services, namely, holding spiritual retreats to assist religious leaders, both clergy and lay, to develop and enhance their spiritual lives; Providing on-line information in the field of spirituality, self-help, and personal empowerment subject matters; Conducting religious prayer services; Conducting religious sermons; Organization of religious meetings; Religious services, namely, prayer meetings; Christian spiritual counseling services; Religious and spiritual services, namely, conducting religious worship, marriage ceremonies, baptismal ceremonies, baby dedications, bereavementceremonies, and religious counseling

## Grounds for Cancellation

| Priority and likelihood of confusion | Trademark Act Sections 14(1) and 2(d) |
|---|---|
| Dilution by tarnishment | Trademark Act Sections 14(1) and 43(c) |
| Fraud on the USPTO | Trademark Act Section 14(3); In re Bose Corp., 580 F.3d 1240, 91 USPQ2d 1938 (Fed. Cir. 2009) |

## Marks Cited by Petitioner as Basis for Cancellation

| U.S. Registration No. | 1177185 | Application Date | 05/07/1980 |
|---|---|---|---|
| Registration Date | 11/10/1981 | Foreign Priority Date | NONE |
| Word Mark | SEVENTH-DAY ADVENTIST | | |
| Design Mark | | | |
| Description of Mark | NONE | | |
| Goods/Services | Class 016. First use: First Use: 1861/00/00 First Use In Commerce: 1861/00/00 | | |
| | Religious Books, Magazines, Pamphlets, Newsletters, Brochures, Encyclopedias, Dictionaries, Commentaries, Fliers, Bulletins, Yearbooks, Booklets and Bibles | | |
| | Class 036. First use: First Use: 1973/00/00 First Use In Commerce: 1973/00/00 | | |
| | Establishment and Administration of Employee Health Care and Benefit Programs and Medical Insurance Programs | | |
| | Class 041. First use: First Use: 1894/00/00 First Use In Commerce: 1894/00/00 | | |
| | Educational Instruction Services in Academics at Grade School, High School and College Level; Film Production and Distribution Services | | |
| | Class 042. First use: First Use: 1860/00/00 First Use In Commerce: 1860/00/00 | | |
| | Health Care Services-Namely, Hospital, Dental, Pharmaceutical, Nursing Home, | | |

| | and Medical Laboratory Services; Conducting Religious Observances and Missionary Services |
|---|---|

| U.S. Registration No. | 1171760 | Application Date | 05/07/1980 |
|---|---|---|---|
| Registration Date | 09/29/1981 | Foreign Priority Date | NONE |
| Word Mark | GENERAL CONFERENCE OF SEVENTH-DAY ADVENTISTS | | |
| Design Mark | | | |
| Description of Mark | NONE | | |
| Goods/Services | Class 042. First use: First Use: 1963/00/00 First Use In Commerce: 1963/00/00 Church Services-Namely, Rendering Ministerial and Religious Counseling Services | | |

| Attachments | Petition for Cancellation DSDAA.pdf(137170 bytes ) |
|---|---|

| Signature | /Bassam N. Ibrahim/ |
|---|---|
| Name | Bassam N. Ibrahim |
| Date | 12/02/2021 |

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
## BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

|  |  |  |
|---|---|---|
| General Conference Corporation | : | |
| of Seventh-day Adventists | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | Cancellation No. _____ |
| The Davidian Seventh-Day | : | |
| Adventist Association | : | |
| | : | |
| Registrant | : | |

### PETITION FOR CANCELLATION

General Conference Corporation of Seventh-day Adventists ("Petitioner"), a Washington

D.C. corporation located and doing business at 12501 Old Columbia Pike, Silver Spring,

Maryland, 20904-6600, believes that it has been and will continue to be damaged by the

continued registration of U.S. Registration No. 6,540,553, owned by The Davidian Seventh-day

Adventist Association ("Registrant") for the mark THE DAVIDIAN SEVENTH-DAY

ADVENTIST ASSOCIATION ("Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST

ASSOCIATION Mark"), and hereby petitions to cancel said registration.

The grounds for the cancellation are as follows:

1.     Registrant is a Missouri corporation located and doing business at 20412 Farm

Road 1025, Exeter, Missouri, 65647.

2.     Registrant is the record owner of U.S. Reg. No. 6,540,553 for Registrant's THE

DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark in connection with "Audio

and video recordings featuring information on religion, history, religious history, Christian

living, health, and Bible prophecy; Electronic publications, namely, books, articles, pamphlets,

presentation slides featuring information on religion, history, religious history, Christian living, health, and Bible prophecy recorded on computer media; Video recordings featuring information on religion, history, religious history, Christian living, health, and Bible prophecy; Visual and audio recordings featuring information on religion, history, religious history, Christian living, health, and Bible prophecy; Audio books in the field of religion, history, religious history, Christian living, health, and Bible prophecy; Audio recordings featuring information on religion, history, religious history, Christian living, health, and Bible prophecy; Digital materials, namely, CDs, DVDs, and downloadable Audio Files featuring information on religion, history, religious history, Christian living, health, and Bible prophecy; Downloadable e-books in the field of religion, history, religious history, Christian living, health, and Bible prophecy; Downloadable electronic books in the field of religion, history, religious history, Christian living, health, and Bible prophecy; Downloadable multimedia file containing audio relating to religion, history, religious history, Christian living, health, and Bible prophecy; Downloadable multimedia file containing video relating to religion, history, religious history, Christian living, health, and Bible prophecy; Downloadable video recordings featuring information on religion, history, religious history, Christian living, health, and Bible prophecy; E-books featuring information on religion, history, religious history, Christian living, health, and Bible prophecy recorded on computer media; Electronic books featuring information on religion, history, religious history, Christian living, health, and Bible prophecy recorded on computer media" in Class 9; "Printed pamphlets, brochures, manuals, books, booklets, leaflets, informational flyers, informational sheets and newsletters, adhesive backed stickers, and kits comprised solely of one or more of the foregoing materials in the field of religion, history, religious history, Christian living, health, and Bible

prophecy; Books in the field of religion, history, religious history, Christian living, health, and Bible prophecy; Religious books; Flip books; Hymn books; Index books; Song books; Charts in the field of religion, history, religious history, Christian living, health, and Bible prophecy" in Class 16; and "Conducting religious ceremonies; Ecclesiastical services, namely, ordaining ministers to perform religious ceremonies; Ministerial services, namely, holding spiritual retreats to assist religious leaders, both clergy and lay, to develop and enhance their spiritual lives; Providing on-line information in the field of spirituality, self-help, and personal empowerment subject matters; Conducting religious prayer services; Conducting religious sermons; Organization of religious meetings; Religious services, namely, prayer meetings; Christian spiritual counseling services; Religious and spiritual services, namely, conducting religious worship, marriage ceremonies, baptismal ceremonies, baby dedications, bereavement ceremonies, and religious counseling" in Class 45 (hereinafter collectively referred to as "Registrant's Goods and Services").

3.       The continued registration of Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark, to which Registrant is not entitled, has impaired and is likely to continue to unfairly impair the ability of Petitioner to freely use and register Petitioner's SEVENTH-DAY ADVENTIST Marks . Therefore, Petitioner has standing to bring this proceeding.

## COUNT I:       LIKELIHOOD OF CONFUSION

4.       Petitioner is a non-profit corporation established to hold title to the assets of the Seventh-day Adventist Church, including its trademarks.

5.      The Seventh-day Adventist Church is a worldwide Protestant Christian denomination with over 20 million members, including over 1.2 million members and over 5,000 churches in the United States.  The Seventh-day Adventist Church also operates more than 800 primary and secondary schools in the United States; 11 colleges and universities; over 140 health care institutions, including 65 hospitals; more than 20 radio stations; and two satellite television networks.

6.      The founders of the Seventh-day Adventist Church adopted the name "Seventh-day Adventists" at a meeting in Battle Creek, Michigan in 1860.  In May of 1863, delegates from Seventh-day Adventist churches across the United States attended a larger conference at which the General Conference of Seventh-day Adventists was formed, thus marking the official beginning of the Seventh-day Adventist Church as a single unified body.

7.      Registrant and its licensees have used the marks SEVENTH-DAY ADVENTIST to identify and distinguish the Seventh-day Adventist Church's goods and services since at least as early as 1860.

8.      Registrant is the owner of U.S. Reg. No. 1,177,185 for the mark SEVENTH-DAY ADVENTIST in connection with "Religious Books, Magazines, Pamphlets, Newsletters, Brochures, Encyclopedias, Dictionaries, Commentaries, Fliers, Bulletins, Yearbooks, Booklets and Bibles" in Class 16; "Establishment and Administration of Employee Health Care and Benefit Programs and Medical Insurance Programs" in Class 36; "Educational Instruction Services in Academics at Grade School, High School and College Level; Film Production and Distribution Services" in Class 41; and "Health Care Services-Namely, Hospital, Dental,

Pharmaceutical, Nursing Home, and Medical Laboratory Services; Conducting Religious
Observances and Missionary Services" in Class 42.

9.      Registrant is also the owner of U.S. Reg. No. 1,171,760 for the mark GENERAL
CONFERENCE OF SEVENTH DAY ADVENTISTS in connection with "church services,
namely, rendering ministerial and religious counseling services."

10.      The marks listed in Paragraphs 8 and 9 are hereinafter collectively referred to as
"Petitioner's SEVENTH-DAY ADVENTIST Marks."  The goods and services covered by these
registrations shall be referred to as "Petitioner's Goods and Services."

11.      Consumers throughout the United States have come to recognize Petitioner's
SEVENTH-DAY ADVENTIST Marks and to associate them exclusively with Petitioner.
Petitioner has developed an extremely high level of acquired distinctiveness and goodwill in
Petitioner's SEVENTH-DAY ADVENTIST Marks among consumers in the United States.

12.      Petitioner's use of Petitioner's SEVENTH-DAY ADVENTIST Marks in
connection with Petitioner's Goods and Services commenced long prior to any use by Registrant
of Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark in
connection with Registrant's Goods and Services.

13.      Petitioner has continuously used Petitioner's SEVENTH-DAY ADVENTIST
Marks in connection with Petitioner's Goods and Services without interruption since long prior
to any use by Registrant of Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST
ASSOCIATION Mark in connection with Registrant's Goods and Services.

14.      Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION
Mark incorporates Petitioner's Mark SEVENTH-DAY ADVENTIST and is highly similar to

Petitioner's previously registered SEVENTH-DAY ADVENTIST Marks in appearance, pronunciation, and commercial impression.

15. Registrant's Goods and Services are identical or virtually identical to Petitioner's Goods and Services.

16. Registrant's Goods and Services will be offered and provided to the same classes of consumers as Petitioner's Goods and Services.

17. Registrant's Goods and Services will be marketed and provided through the same channels of trade as Petitioner's Goods and Services.

18. Registrant adopted and began using Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark with actual and constructive knowledge of Petitioner's prior rights in Petitioner's SEVENTH-DAY ADVENTIST Marks, and with the intent to confuse and mislead consumers into mistakenly believing that Registrant's Goods and Services are provided by, licensed by, or associated with Petitioner.

19. Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark so resembles Petitioner's previously registered SEVENTH-DAY ADVENTIST Marks as to be likely to cause confusion or mistake or to deceive, by creating the erroneous impression that Registrant's Goods and Services are provided by Petitioner, or that Registrant's Goods and Services are authorized by, licensed by, or associated with Petitioner.

20. The continued registration of U.S. Reg. No. 6,540,553 for Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark is contrary to 15 U.S.C. 1052(d) and violates and diminishes the superior rights of Petitioner in Petitioner's SEVENTH-DAY ADVENTIST Marks.

## COUNT II: DILUTION

21.     Due to Petitioner's longstanding and continuous use of Petitioner's SEVENTH-DAY ADVENTIST Marks, Petitioner's millions of dollars of sales of Petitioner's Goods and Services under Petitioner's SEVENTH-DAY ADVENTIST Marks, Petitioner's extensive advertising and marketing of Petitioner's SEVENTH-DAY ADVENTIST Marks, the extensive unsolicited media coverage of Petitioner's SEVENTH-DAY ADVENTIST Marks in national, regional, an local media, Petitioner's successful efforts to enforce Petitioner's rights in Petitioner's SEVENTH-DAY ADVENTIST Marks against infringers, and other factors, Petitioner's SEVENTH-DAY ADVENTIST Marks have become famous among the general consuming public of the United States.

22.     Petitioner's SEVENTH-DAY ADVENTIST Marks became famous among the general consuming public of the United States long prior to the March 12, 2020 filing date of Application Serial No. 88/831,784 for Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark, and/or any use by Registrant of Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark.

23.     Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark is highly similar to Petitioner's SEVENTH-DAY ADVENTIST Marks.

24.     Registrant adopted Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark with actual and constructive knowledge of Petitioner's prior rights in Petitioner's SEVENTH-DAY ADVENTIST Marks, and with the intent to create an association with Petitioner's SEVENTH-DAY ADVENTIST Marks and to trade off of the fame and goodwill associated with Petitioner's SEVENTH-DAY ADVENTIST Marks.

25.    The continued registration of U.S .Reg. No. 6,540,553 for Registrant's THE

DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark is likely to cause dilution of

Petitioner's famous SEVENTH-DAY ADVENTIST Marks.

26.    The continued registration of Registrant's THE DAVIDIAN SEVENTH-DAY

ADVENTIST ASSOCIATION Mark violates and diminishes the prior and superior rights of

Petitioner in Petitioner's SEVENTH-DAY ADVENTIST Marks in violation of 15 U.S.C. 1065

and 15 U.S.C. 1125(c).

### COUNT III:  FRAUD

27.    Registrant filed Application Serial No. 88/831,784 for Registrant's THE

DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark in connection with

Registrant's Goods and Services on March 12, 2020, alleging use in commerce under Section

1(a) of the Trademark Act for certain goods and services, and intent-to-use in connection with

the remaining goods and services.

28.    Registrant was not using Registrant's THE DAVIDIAN SEVENTH-DAY

ADVENTIST ASSOCIATION Mark in connection with some or all of the goods and services

covered by Registrant's Section 1(a) claim at the time Registrant filed Application Serial No.

88/831,784 for Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION

Mark on March 12, 2020.

29.    Registrant stated in the sworn Declaration submitted with Application Serial No.

88/831,784 for Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION

Mark that "the mark is in use in commerce on or in connection with the goods/services in the

application."

30.    Registrant's statement in the sworn Declaration submitted with Application Serial No. 88/831,784 that "the mark is in use in commerce on or in connection with the goods/services in the application" was false.

31.    Registrant knew that the statement in the sworn Declaration submitted with Application Serial No. 88/831,784 that "the mark is in use in commerce on or in connection with the goods/services in the application" was false at the time the declaration was signed on March 12, 2020.

32.    Registrant made the false statement in the sworn Declaration with the intent to deceive the USPTO into granting Registrant a trademark registration for Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark to which Registrant was not entitled.

33.    Registrant subsequently filed a Statement of Use on September 13, 2021 in connection with the goods and services that were not covered by the Section 1(a) claim at the time the application was filed.

34.    Registrant stated in the sworn Statement of Use submitted on September 13, 2021 in connection with Application Serial No. 88/831,784 for Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark that "the mark is in use in commerce on or in connection with all of the goods/services" in the application.

35.    Registrant was not using Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark in connection with some or all of the goods and services covered by the Statement of Use at the time Registrant filed the Statement of Use in connection with Application Serial No. 88/831,784 on September 13, 2021.

36.    Registrant's statement in the sworn Statement of Use that "the mark is in use in commerce on or in connection with all of the goods/services" was false.

37.    Registrant knew that the statement in the sworn Statement of Use that "the mark is in use in commerce on or in connection with all of the goods/services" was false at the time the declaration was signed on September 13, 2021.

38.    Registrant made the false statements in the sworn Declaration and the sworn Statement of Use with the intent to deceive the USPTO into granting Registrant a trademark registration for Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark to which Registrant was not entitled.

39.    The false statements in the sworn Declaration and the sworn Statement of Use that the mark was in use in commerce on or in connection with all of the goods/services in the application were material because the USPTO would not have granted a registration for THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION to Registrant without these false statements.

40.    Registrant's false statements that Registrant was using the mark in commerce in connection with all of the goods/services in the application constitute fraud upon the USPTO.

41.    Registrant's U.S. Reg. No. 6,540,553 for Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark should be cancelled pursuant to 15 U.S.C. 1064(3) on the grounds of fraud.

## COUNT IV:  IMPROPER DISCLAIMER

42.    The Examining Attorney responsible for Registrant's Application Serial No. 88/831,784 for Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION

Mark originally cited Petitioner's U.S. Reg. Nos. 1,171,760 and 1,177,185 for Petitioner's

SEVENTH-DAY ADVENTIST Marks as bars to registration of Registrant's Mark under Section

2(d) of the Trademark Act in an office action dated June 4, 2020.

43.     On December 1, 2020, Registrant submitted a response to the office action, in

which Registrant falsely argued that Petitioner's mark SEVENTH-DAY ADVENTIST was

weak, descriptive, and entitled to a narrow scope of protection.

44.     As a direct result of Registrant's false and misleading arguments, the Examining

Attorney sent an e-mail to Registrant's counsel on December 10, 2020, offering to withdraw the

likelihood of confusion refusal if Registrant submitted a disclaimer of the term SEVENTH-DAY

ADVENTIST ASSOCIATION.

45.     Registrant's counsel accepted the Examining Attorney's offer via e-mail on

December 16, 2020, and Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST

ASSOCIATION Mark was subsequently registered with the disclaimer "No claim is made to the

exclusive right to use 'SEVENTH-DAY ADVENTIST ASSOCIATION' apart from the mark as

shown."

46.     The disclaimer included in U.S. Reg. No. 6,540,553 for Registrant's THE

DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark is in violation of the

USPTO's rules.  The Trademark Manual of Examining Procedure states that a mark containing

the registered mark of another may not be registered merely by disclaiming the prior mark.

TMEP § 1213.09.  "A refusal of registration under Section 2(d) may not be avoided by

disclaiming the mark of another." *Id.*

47.     Petitioner's SEVENTH-DAY ADVENTIST Mark is registered on the Principal

Register, which means it is entitled to presumptions of validity, distinctiveness, and Petitioner's ownership of and exclusive right to use the mark. 15 U.S.C. §1115(a). By allowing Registrant to disclaim the registered SEVENTH-DAY ADVENTIST mark, the Examining Attorney not only violated Office policy, but the presumptions afforded to Petitioner under law as the owner of a federal registration.

48.   The continued registration of Registrant's THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION Mark with a disclaimer of SEVENTH-DAY ADVENTIST ASSOCIATION is likely to cause significant harm to Petitioner, because potential future applicants reviewing the USPTO's database are likely to mistakenly believe that SEVENTH-DAY ADVENTIST is merely a descriptive term that is free for all to use and register, rather than a distinctive mark belonging exclusively to Petitioner.

WHEREFORE, Petitioner prays that this Petition for Cancellation be granted, that U.S. Registration No. 6,540,553 be cancelled, and for any and all other relief that the Trademark Trial and Appeal Board may deem just and proper.

Respectfully submitted,

**GENERAL CONFERENCE CORPORATION OF SEVENTH-DAY ADVENTISTS**

Date: December 2, 2021              /Bassam N. Ibrahim/
                                    Bassam N. Ibrahim
                                    Bryce J. Maynard
                                    Buchanan Ingersoll & Rooney PC
                                    1737 King Street, Suite 500
                                    Alexandria, Virginia 22314-2727
                                    (703) 836-6620

                                    Attorneys for Petitioner

# EXHIBIT B

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA 22313-1451**
General Contact Number: 571-272-8500
General Email: TTABInfo@uspto.gov

KGC

July 23, 2024

Cancellation No. 92078546

*General Conference Corporation of Seventh-day Adventists*

$v.$

*The Davidian Seventh-day Adventist Association*

**By the Trademark Trial and Appeal Board:**

This proceeding is before the Board for consideration of Respondent/Counterclaim-Plaintiff's (hereinafter, "Davidian") motion for default judgment (45 TTABVUE),[1] and Petitioner/Counterclaim-Defendant's (hereinafter,

---

[1] In this order, citations to the record are to TTABVUE, the Board's online docketing system. *See Turdin v. Trilobite, Ltd.*, Conc. Use No. 94002505, 2014 WL 343270, at \*2 n.6 (TTAB 2014); *see also* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 106.03 (2024). Specifically, the number preceding TTABVUE corresponds to the docket entry number, and any number(s) following TTABVUE refer to the page number(s) of the docket entry where the cited materials appear. The Board expects the parties to use this method of citing to the record throughout this proceeding.

As part of an internal Board pilot citation program on broadening acceptable forms of legal citation in Board cases, the citation form in this order is in a form provided in TBMP § 101.03. This order cites decisions of the U.S. Court of Appeals for the Federal Circuit and the U.S. Court of Customs and Patent Appeals only by the page(s) on which they appear in the Federal Reporter (e.g., F.2d, F.3d, or F.4th). For decisions of the Board, this order employs citation to the Westlaw (WL) database. Practitioners should also adhere to the practice set forth in TBMP § 101.03.

"General") motion for leave to amend its petition for cancellation (47 TTABVUE). The motions are fully briefed.[2]

## I. Motion for Default Judgment

### A. Preliminary Matter

General timely served and filed its response to the motion on March 27, 2024 (46 TTABVUE 1, 10), meaning Davidian's reply brief was due within twenty days therefrom, or Tuesday, April 16, 2024. *See* Trademark Rule 2.127(a) ("[A] reply brief, if filed, shall be filed within twenty days from the date of service of the brief in response to the motion."). Inasmuch as Davidian did not file and serve its reply brief until the next day, Wednesday, April 17, 2024, it is one-day late, and, thus, will not be considered.[3] 48 TTABVUE 1, 5; *see Saint-Gobain Corp. v. Minn. Mining & Mfg. Co.*, Opp. No. 91119166, 2003 WL 476503, at *1 (TTAB 2003) ("[T]he reply brief … is untimely and, thus, has received no consideration.") (footnote omitted).

### B. Standard

"[T]he standard for determining whether default judgment should be entered against the defendant for its failure to file a timely answer to the complaint is the Fed. R. Civ. P. 55(c) standard, which requires that the defendant show good cause why default judgment should not be entered against it." TBMP § 508. "This good

---

[2] The Board has considered the parties' submissions and presumes the parties' familiarity with the factual bases for the motions. The Board does not recount the facts or arguments here, except as necessary to explain its order. *See Guess? IP Holder L.P. v. Knowluxe LLC*, Can. No. 92060707, 2015 WL 9702438, at *1-2 (TTAB 2015).

[3] Regardless, "[t]he filing of reply briefs is discouraged, as the Board generally finds that reply briefs have little persuasive value and are often a mere reargument of the points made in the main brief." TBMP § 502.02(b) (footnote omitted).

2

cause is usually found to have been established if the delay in the filing is not the result of willful conduct or gross neglect on the part of the defendant, if the delay will not result in substantial prejudice to the plaintiff, and if the defendant has a meritorious defense." *Fred Hayman Beverley Hills, Inc. v. Jacques Bernier, Inc.*, Opp. No. 91084521, 1991 WL 332557, at *1 (TTAB 1991) (citation omitted). When considering these factors, the Board keeps in mind "that the law favors judgments on the merits whenever possible." *Hewlett-Packard Co. v. Olympus Corp.*, 931 F.2d 1551, 1554 (Fed. Cir. 1991).

### C. Analysis

#### i. Prejudice

Prejudice typically results if a party's ability to litigate the case, such as the unavailability of witnesses or evidence, is harmed as a result of the adverse party's inaction. *Cf. Pumpkin Ltd. v. Seed Corps*, Opp. No. 91099224, 1997 WL 473051, at *7 (TTAB 1997) ("Turning next to the first Pioneer factor, i.e., the danger of prejudice to applicant, it does not appear from this record that applicant's ability to defend against opposer's claims has been prejudiced by opposer's failure to adhere to the trial schedule. That is, there has been no showing that any of applicant's witnesses and evidence have become unavailable as a result of the delay in proceedings.") (citations and footnote omitted). Inasmuch as there is no allegation or evidence of prejudice to Davidian, this favors General.

### ii. Willful Conduct or Gross Neglect

General argues that its failure to timely answer the counterclaims "was the result of a clerical error that resulted in the deadline for filing the Answer not being properly docketed." 46 TTABVUE 3. Inasmuch as there is no evidence to refute this explanation, the Board takes General at its word. *Cf. Old Nutfield Brewing Co. v. Hudson Valley Brewing Co.*, Opp. No. 91120235, 2002 WL 1832021, at *4 n.8 (TTAB 2002) ("[W]e take opposer at its word[.]"). That is not to say, however, that General was not negligent in its inaction; it was inasmuch as any clerical error is solely attributable to General. Such conduct, though, does not rise to the level of being willful or grossly neglectful.[4] *See, e.g., DeLorme Publ'g Co. v. Eartha's Inc.*, Opp. No. 91116102, 2000 WL 33321172, at *2-3 (TTAB 2000) (finding delay "was the result of applicant's willful conduct and gross neglect" where applicant, "for nearly six months," "consciously chose to ignore the notice of opposition it received along with the Board's institution letter and trial order") (citations omitted); *cf. Info. Sys. & Networks Corp. v. United States*, 994 F.2d 792, 796 (Fed. Cir. 1993) ("If negligence can come within the definition of excusable neglect, mere failure to answer after receiving notice of a counterclaim can also. Thus, one should inquire whether the defaulting party willfully declined to follow a court's rules and procedures."). It also is not lost on the Board that General filed its answer a mere two days after the

---

[4] The Board expects that General has put in place whatever safeguards it deems are necessary to ensure future compliance with deadlines in this proceeding. *See PolyJohn Enters. Corp. v. 1-800-Toilets, Inc.*, Can. No. 92030938, 2002 WL 139328, at *3 (TTAB 2002) ("[T]he Board is also justified in enforcing procedural deadlines.") (citing *Hewlett-Packard*, 931 F.2d at 1554).

4

deadline therefor. *Cf. Coffee Studio LLC v. Reign LLC*, Can. No. 92066245, 2019 WL 990243, at *3 (TTAB 2019) ("Petitioner submitted its proposed testimonial affidavits and notices of reliance when it moved to reopen testimony. This factor weighs in Petitioner's favor as it is a relatively short period of time and Petitioner attempted to mitigate any delay."). Thus, this favors General.

### iii. Meritorious Defense

Lastly, inasmuch as General has filed a non-frivolous answer to the counterclaims denying the salient allegations therein, General has a meritorious defense. 46 TTABVUE 6-9; *see Fred Hayman Beverly Hills*, 1991 WL 332557, at *2 ("[B]y the submission of an answer which is not frivolous, applicant has adequately shown that it has a meritorious defense"). Thus, this favors General.

### D. Decision

Accordingly, and inasmuch as "the law favors judgments on the merits whenever possible," *Hewlett-Packard*, 931 F.2d at 1554, Davidian's motion for default judgment is **denied**, and the answer accompanying General's response to the motion is **accepted** as General's operative responsive pleading in this proceeding.

## II. Motion for Leave To Amend

General seeks leave to amend its petition for cancellation to add a lack of distinctiveness claim and two bases for its already-pleaded fraud claim.

### A. Standard

"The Board liberally grants leave to amend pleadings at any stage of a proceeding when justice so requires, unless entry of the proposed amendment would violate

settled law or be prejudicial to the rights of the adverse party or parties." *Am. Express Mktg. & Dev. Corp. v. Gilad Dev. Corp.*, Opp. No. 91183362, 2010 WL 956669, at *3 (TTAB 2010) (citations omitted). In determining whether to grant leave to amend, which "is within the discretion of the Board," *Trek Bicycle Corp. v. StyleTrek Ltd.*, Opp. No. 91118613, 2001 WL 1869327, at *1 (TTAB 2001), the Board considers "undue delay, bad faith or dilatory motive on the part of the movant, … undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment," and whether the movant previously amended its pleading. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The timing of the motion for leave to amend is a major factor in determining whether [the non-movant] would be prejudiced by allowance of the proposed amendment." *Media Online Inc. v. El Clasificado, Inc.*, Can. No. 92047294, 2008 WL 4419361, at *2 (TTAB 2008) (citation omitted).

## B. Analysis

General has not amended its petition for cancellation before.

Though Davidian argues that General has acted in bad faith (49 TTABVUE 11-12), Davidian proffers no evidence supporting its assertion. *See Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 424 F.3d 1276, 1284 (Fed. Cir. 2005) ("Attorney argument is no substitute for evidence."). In addition, Davidian argues that General has dilatory motives.[5] 49 TTABVUE 11-12. The Board does not agree. Though General has thrice

---

[5] Davidian submits two e-mails from General's counsel requesting a sixty-day extension. 49 TTABVUE 22-24. These requests, alone, do not support that General has dilatory motives or is acting in bad faith.

moved to extend this proceeding, these extension were with Davidian's consent. 24, 27, 42 TTABVUE.

According to General, it learned of the facts allegedly supporting the proposed amendments "as a result of discovery in this case," in particular, through Davidian's document production,[6] the July 2023 deposition of Davidian's vice president, and additional research.[7] 47 TTABVUE 3-4, 6. With respect to the deposition, General argues that the deponent, "who signed two declarations in connection with the filing and prosecution of the application that eventually became the mark at issue in this registration, .... admitted that she was aware of ... other 'Davidian Seventh-day Adventist' associations groups at the time she signed a declaration in March of 2020." *Id.* at 4. She also purportedly "stated that contrary to the allegations she made in a separate declaration submitted in connection with a response to an office action, she was not aware of any specific instances in which Petitioner had distinguished itself from Registrant." *Id.* (citation and footnote omitted). Though these alleged representations, which support the additional fraud bases (*id.* at 21-26, ¶¶ 41-65), were made in July 2023, approximately nine months before the motion was filed, proceedings were suspended and Davidian's motions were pending for a majority of

---

[6] General argues that Davidian "produced a copy of a self-published book titled 'Davidia Divided,' which was published in 2015," in which Davidian "discusses numerous other organizations that use names containing 'Davidian Seventh-day Adventist' and 'Association.'" 47 TTABVUE 3.

[7] Following the deposition, General asserts that it "conducted additional research into the other 'Davidian Seventh-day Adventist' groups," and that it "located additional evidence establishing [Davidian's] prior knowledge of these groups, including web and social media posts.'" *Id.* at 4.

this time. And the Board "decline[s] to penalize [General] for taking no action while proceedings were suspended" or while other motions were pending. *Jive Software, Inc. v. Jive Commc'ns, Inc.*, Opp. No. 91218826, 2017 WL 6527147, at *8 (TTAB 2017).

However, with respect to Davidian's discovery production of a book that was published in 2015 and General's additional research that followed the July 2023 deposition, General fails to explain why it did not conduct this additional research earlier in the proceeding, including before filing the petition for cancellation, nor does General explain why it could not obtain a book that was published approximately six years before this proceeding was instituted.

Notwithstanding, "the concept of 'undue delay' is inextricably linked with the concept of prejudice to the non-moving party, such that the Board may determine that if there is no prejudice to the non-moving party, there is no undue delay." *Topco Holdings, Inc. v. Hand 2 Hand Indus., LLC*, Opp. No. 91267988, 2022 WL 157880, at *2 (TTAB 2022) (citations omitted). Though an order suspending this proceeding was not issued following Davidian's motion for default judgment, *see* Trademark Rule 2.127(d) ("When any party timely files a potentially dispositive motion, … the case is suspended by the Trademark Trial and Appeal Board[.]"), when the motion was filed, there were more than two months left in discovery.[8] Inasmuch as one-third of the discovery period remains, the Board finds that this is a sufficient amount of time for

---

[8] For purposes of the schedule, the Board will deem proceedings to have been suspended as of the filing of the motion for default judgment, notwithstanding that the Board, in its discretion, also will decide the fully briefed motion for leave to amend. This should allay Davidian's concerns that it "will have only a highly abbreviated window of time to conduct written discovery and deposition discovery to fully probe the purported evidentiary grounds for Petitioner's new positions." 49 TTABVUE 6. To the extent the time remaining in discovery

Davidian to obtain discovery on the new allegations, thereby mitigating any prejudice. *See Topco Holdings*, 2022 WL 157880, at \*4 ("[T]here is no evidence of undue prejudice, inasmuch as three months of discovery remained at the time Opposer filed its motion for leave to amend, thus allowing time for Applicant to obtain discovery on Opposer's amended allegations.") (citations omitted); *Am. Express Mktg. & Dev.*, 2010 WL 956669, at \*3 ("[T]he delay, while substantial, is not prejudicial to opposer, inasmuch as these consolidated proceedings are still in the discovery stage and opposer could be afforded time in which to take discovery on the newly asserted defense if it chooses to do so."). Accordingly, the Board does not find that Davidian will be prejudiced if General's amended petition for cancellation is permitted, and, thus, there is no undue delay on General's part in moving to amend.

Finally, "where the moving party seeks to add a new claim, and the proposed pleading thereof is legally insufficient, or would serve no useful purpose, the Board normally will deny the motion for leave to amend." *Giersch v. Scripps Networks, Inc.*, Can. No. 92045576, 2007 WL 1653585, at \*5 (TTAB 2007) (citations omitted). For the below reasons, the Board finds that only the lack of distinctiveness claim is acceptable.

With respect to the lack of distinctiveness claim,[9] General sufficiently alleges that Davidian's mark is merely descriptive and lacks acquired distinctiveness because:

---

is insufficient for Davidian to obtain discovery on the new allegations, the Board expects the parties to cooperate, including agreeing to reasonable extensions of time. *See* TBMP § 408.01.

[9] Davidian argues that General's assertion that Davidian's "Mark is merely descriptive of the goods and services with which the Mark is used …. is inconsistent with [General's] assertion that [General's] Marks are distinctive and that consumers are likely to be confused between the sources represented by the Parties' respective marks." 49 TTABVUE 9 (citation omitted).

Davidian disclaimed "SEVENTH-DAY ADVENTIST ASSOCIATION" in the mark; the remaining wording in the mark, DAVIDIAIN, "means living one's life in the manner of the biblical King David"; "[t]he relevant consumers of [Davidian's] Goods and Services understand that the term DAVIDIAN as used in connection with [Davidian's] Goods and Services refers to something related to or having to do with King David"; Davidian's use "has been de minimis" in that it "currently only has approximately 100 members in the United States," and its "sales figures, advertising expenditures, media coverage, and other traditional indicia of acquired distinctiveness are all virtually non-existent"; and "there are numerous other active uses of virtually identical or highly similar marks by other religious organizations" "in connection with religious services and related goods and services, including books and publications."[10] 47 TTABVUE 26-28, ¶¶ 67-69, 72-74; *see M. Polaner Inc. v. J.M. Smucker Co.*, Can. No. 92020188, 1992 WL 240692, at *1 (TTAB 1992) ("[W]e find that petitioner's allegation that the term 'Simply Fruit' is merely descriptive as applied to respondent's goods set forth a claim upon which relief may be granted."); *Neapco Inc. v. Dana Corp.*, Can. No. 92017572, 1989 WL 274388, at *2 (TTAB 1989) ("In sum, if it is established either that as of the time of registration, the registered

---

However, "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

[10] General also alleges that the identified "organizations … have been using … virtually identical or highly similar … Mark[s] contemporaneously with [Davidian] … for several decades"; that this third-party use "has been at least as extensive as" Davidian's; and, with one exception, Davidian "has never objected to the use of marks containing DAVIDIAN SEVENTH-DAY ADVENTIST and ASSOCIATION by any of the organizations." 47 TTABVUE 28, ¶¶ 76-77.

mark was merely descriptive and lacked a secondary meaning, or that as of the present time, the mark is merely descriptive and lacks a secondary meaning, the cancellation petition would be granted.").[11]

A fraud claim generally requires identifying a false, material representation of fact in a party's submission to obtain or maintain a registration, and alleging that this false, material representation of fact was knowingly made with the intent to deceive the USPTO into issuing or maintaining the registration. *See In re Bose Corp.*, 580 F.3d 1240, 1245 (Fed. Cir. 2009). "Subjective intent to deceive, however difficult it may be to prove, is an indispensable element." *Id.* These elements, moreover, must be pleaded "with a heightened degree of particularity in compliance with Fed. R. Civ. P. 9(b)." *PepsiCo, Inc. v. Arriera Foods LLC*, Opp. No. 91269057, 2022 WL 15328405, at *10 (TTAB 2022) (citation omitted). Fed. R. Civ. P. "9(b) requires that the pleadings contain explicit rather than implied expression of the circumstances constituting fraud." *King Auto., Inc. v. Speedy Muffler King, Inc.*, 667 F.2d 1008, 1010 (CCPA 1981) (citations omitted).

Though Fed. R. Civ. P. 9(b) permits "knowledge[] and other conditions of a person's mind [to] be alleged generally" and allows "pleading on 'information and belief,'" the

---

[11] The Board notes that Davidian's registration is not registered with a claim of acquired distinctiveness under Trademark Act Section 2(f), 15 U.S.C. § 1052(f). Accordingly, the parties are advised that in *Robinson v. Hot Grabba Leaf, LLC*, Can. No. 92060394, 2019 WL 1915759 (TTAB 2019), in which the counterclaim-plaintiff asserted that the counterclaim-defendant's registrations were merely descriptive and did not acquire distinctiveness, the registrations, too, were not registered with a claim of acquired distinctiveness. The Board, however, found that "the issue of acquired distinctiveness [was] not before" it because the counterclaim-defendant "ha[d] not pleaded or argued that his marks have acquired distinctiveness." *Robinson*, 2019 WL 1915759, at *6 n.24.

complainant still must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind" or assert "specific facts upon which the belief is reasonably based." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327, 1330 (Fed. Cir. 2009) (footnotes omitted).

With respect to the claim of fraud based on "[f]raudulent [s]tatements in [the] [d]eclaration," this must include the following allegations beyond those in *Bose*: (1) there was another user of the same or a confusingly similar mark when the declaration in the application underlying the involved registration was signed; (2) this other user had superior legal rights; (3) Davidian knew of this, and either believed a likelihood of confusion would result from Davidian's use of its mark or had no reasonable basis for believing otherwise; and (4) in failing to disclose this to the USPTO, Davidian intended to procure a registration to which it was not entitled. *See Qualcomm Inc. v. FLO Corp.*, Opp. No. 91182244, 2010 WL 985358, at *2 (TTAB 2010).

Because of its use of indefinite language—"including but not limited to"—General does not identify all of the organizations that purportedly "were using virtually identical or highly similar marks at the time Ms. Wilkins signed the Application Declaration in March of 2020." 47 TTABVUE 22, ¶¶ 42-43. General also does not allege which of these organizations, in particular, had superior legal rights, suggesting that some of these organizations did not. *See id.* at 22, ¶ 45 ("The other organizations using virtually identical or highly similar marks are of a similar size to Registrant and have been using the marks at issue **for as long** or longer than

Registrant.") (emphasis added). Though General alleges that "Registrant was aware that all of these organizations were using virtually identical or highly similar marks," it also contradictorily asserts that "Ms. Wilkins admitted in her deposition that she was aware of **nearly all** of these uses." *Id.* at 22, ¶¶ 43-44 (emphasis added); *see PepsiCo*, 2022 WL 15328405, at *10 ("A claim of fraud must set forth all elements of the claim with a heightened degree of particularity in compliance with Fed. R. Civ. P. 9(b).") (citation omitted). Finally, there is no allegation that Davidian either believed a likelihood of confusion would result from its use of its mark or had no reasonable basis for believing otherwise.

With respect to the claim of fraud based on "[f]raudulent [s]tatements in [the] [p]rosecution of [the] [a]pplication," it appears that this claim is based on the premise that but for Davidian's purportedly false representation that General "'regularly distinguishes itself from'" Davidian, Davidian's mark would not have been found distinguishable from General's marks and would not have been approved for registration by the Examining Attorney. However, the Examining Attorney's determination of a likelihood of confusion was not based on General's purported "regular[] distin[ction]," but, rather, was based on the marks and the goods and/or services as set forth in Davidian's application and General's registrations. *See In re Ox Paperboard, LLC*, Ser. No. 87847482, 2020 WL 4530517, at *3 (TTAB 2020) ("In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods.") (citations omitted). Thus, there is no basis on which the Board could conclude that the Examining

Attorney relied on this particular representation, such that this predicate for fraud is not plausible.[12] *See Dragon Bleu (SARL) v. VENM, LLC*, Opp. No. 91212231, 2014 WL 7206399, at *4 (TTAB 2014).

Regardless, General alleges that Davidian "attached several examples to the Response [to Office Action] of [General] allegedly 'distinguishing' itself from" Davidian, but that "all of the purported examples ... were actually examples of [General] distinguishing itself from" third parties. 47 TTABVUE 25, ¶¶ 56-57. If, as General asserts, Davidian attached to its Office Action response evidence that contradicts Davidian's purportedly false assertion, then Davidian actually provided the USPTO with the relevant facts, e.g., the evidence, on which to consider the veracity of Davidian's representation. *See Swiss Watch Int'l, Inc. v. Fed'n of the Swiss Watch Indus.*, Can. No. 92046786, 2012 WL 504693, at *16 (TTAB 2012) ("The fact that the term SWISS MADE does not appear in respondent's 'Standards' is not a sufficient basis for us to find fraud. Respondent's response to the Office action was quite clear; it advised the examining attorney that it was submitting 'a copy of its standards as well as an abstract of the Swiss Ordinance on which these standards are based.' The submissions are also clearly marked.... Respondent made no false statements to the examining attorney, and a false statement is one of the critical elements in proving fraud.").

---

[12] In fact, General alleges in a conclusory fashion that "the Examining Attorney would have maintained the refusal of registration based upon [General's] prior marks" because of Davidian's "false statements in the Response and the Response Declaration that [General] regularly distinguishes itself from" Davidian. 47 TTAVBUE 26, ¶ 64. But there are no factual allegation to support this.

## C. Decision

Accordingly, and inasmuch as "the interests of justice and judicial economy would be served by permitting all claims between the parties to be adjudicated," General's motion for leave to amend its petition for cancellation is **granted in part** with respect to the lack of distinctiveness claim, but is **denied in part** as to the two additional bases for fraud. *See Topco Holdings*, 2022 WL 157880, at *4 (citation omitted). The proposed amended petition for cancellation accompanying the motion is **accepted** as General's operative complaint in this proceeding, albeit with the "[f]raudulent [s]tatements in [the] declaration" and "[f]raudulent [s]tatements in [the] [p]rosecution of [the] application" bases **stricken**.

## III. Repleading

If the Board finds a claim to be insufficiently pleaded, the Board generally will allow the plaintiff an opportunity to replead it. *See Wise F&I, LLC v. Allstate Ins. Co.*, Opp. No. 91226028, 2016 WL 6777774, at *8 (TTAB 2016); *Intellimedia Sports, Inc. v. Intellimedia Corp.*, Can. No. 92024801, 1997 WL 398344, at *6 (TTAB 1997). Accordingly, and in the Board's discretion, General is **allowed** until **August 13, 2024** to file with the Board and serve on Davidian a second amended petition for cancellation that sufficiently repleads the claim of fraud based on "[f]raudulent [s]tatements in [the] declaration" only. *See* Fed. R. Civ. P. 15(a)(2).

Davidian is **allowed** until **September 3, 2024** to file with the Board and serve on General its answer (or other response) to any second amended petition for cancellation, if filed, or its answer to the amended petition for cancellation if a second

amended petition for cancellation is not filed. Any answer must be combined with the second amended counterclaims that the Board permitted Davidian to file. 44 TTABVUE.

General is **allowed** until **September 23, 2024** to file with the Board and serve on Davidian its answer to the second amended counterclaims.

## IV. Schedule

Proceedings are **suspended** pending the reclosing of pleadings, and will automatically **resume** on **September 24, 2024** with the following **reset** schedule:

| | |
|---|---|
| Expert Disclosures Due | 11/10/2024 |
| Discovery Closes | 12/10/2024 |
| Pretrial Disclosures Due for Party in Position of Plaintiff in Original Claim | 1/24/2025 |
| 30-day Trial Period Ends for Party in Position of Plaintiff in Original Claim | 3/10/2025 |
| Pretrial Disclosures Due for Party in Position of Defendant in Original Claim and in Position of Plaintiff in Counterclaim | 3/25/2025 |
| 30-day Trial Period Ends for Party in Position of Defendant in Original Claim, and in Position of Plaintiff in Counterclaim | 5/9/2025 |
| Pretrial Disclosures Due for Rebuttal of Party in Position of Plaintiff in Original Claim and in Position of Defendant in Counterclaim | 5/24/2025 |
| 30-day Trial Period Ends for Rebuttal of Party in Position of Plaintiff in Original Claim, and in Position of Defendant in Counterclaim | 7/8/2025 |
| Pretrial Disclosures Due for Rebuttal of Party in Position of Plaintiff in Counterclaim | 7/23/2025 |
| 15-day Trial Period Ends for Rebuttal of Party in Position of Plaintiff in Counterclaim | 8/22/2025 |
| Opening Brief for Party in Position of Plaintiff in Original Claim Due | 10/21/2025 |
| Combined Brief for Party in Position of Defendant in Original Claim and Opening Brief as Plaintiff in Counterclaim Due | 11/20/2025 |
| Combined Rebuttal Brief for Party in Position of Plaintiff in Original Claim and Brief as Defendant in Counterclaim Due | 12/20/2025 |
| Rebuttal Brief for Party in Position of Plaintiff in Counterclaim Due | 1/4/2026 |
| Request for Oral Hearing (optional) Due | 1/14/2026 |

## V. Important Trial and Briefing Instructions

Generally, the Federal Rules of Evidence apply to Board trials. Trial testimony is taken and introduced out of the presence of the Board during the assigned testimony periods. The parties may stipulate to a wide variety of matters, and many requirements relevant to the trial phase of Board proceedings are set forth in Trademark Rules 2.121 through 2.125. These include pretrial disclosures, the manner and timing of taking testimony, matters in evidence, and the procedures for submitting and serving testimony and other evidence, including affidavits, declarations, deposition transcripts and stipulated evidence. Trial briefs shall be submitted in accordance with Trademark Rules 2.128(a) and (b). Such briefs should utilize citations to the TTABVUE record created during trial, to facilitate the Board's review of the evidence at final hearing. *See* TBMP § 801.03. Oral argument at final hearing will be scheduled only upon the timely submission of a separate notice as allowed by Trademark Rule 2.129(a).

# EXHIBIT C

# UNITED STATES DISTRICT COURT

for the

Eastern District of Tennessee

| | | |
|---|---|---|
| General Conf. Corp. of Seventh-day Adventists | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   TTAB Proceeding No. 92078546 |
| The Davidian Seventh-day Adventist Association | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                  It Is Written, Inc.

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters: See attached Schedule A.

| Place:   The Westin Chattanooga<br>801 Pine St.<br>Chattanooga, TN 37402 | Date and Time:<br>         05/20/2024 9:00 am |
|---|---|

The deposition will be recorded by this method:    Stenography

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Schedule B.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   4/24/2024

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    The Davidian Seventh-day Adventist Association                   , who issues or requests this subpoena, are:

Theodore J. Chiacchio, 307 N. Michigan Ave., Ste. 2011, Chicago, IL 60601; 312-919-2719

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. TTAB Proceeding No. 92078546

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

    ❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____      _____

                                            *Server's signature*

                                            *Printed name and title*

                                            *Server's address*

Additional information regarding attempted service, etc.:

Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**

**(A) Appearance Not Required.** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B) Objections.** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

**(A) When Required.** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

**(B) When Permitted.** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

**(C) Specifying Conditions as an Alternative.** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:

**(A) Documents.** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B) Form for Producing Electronically Stored Information Not Specified.** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C) Electronically Stored Information Produced in Only One Form.** The person responding need not produce the same electronically stored information in more than one form.

**(D) Inaccessible Electronically Stored Information.** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**

**(A) Information Withheld.** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B) Information Produced.** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
### BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

GENERAL CONFERENCE CORPORATION
OF SEVENTH-DAY ADVENTISTS,

      Petitioner/Counter-Respondent,

v.

THE DAVIDIAN SEVENTH-DAY
ADVENTIST ASSOCIATION,

      Registrant/Counter-Petitioner.

Cancellation Proceeding No. 92 078546

### NOTICE OF DEPOSITION OF IT IS WRITTEN, INC.

PLEASE TAKE NOTICE that pursuant to and in accordance with Fed. R. Civ. P. 3 0(b)(6),

Registrant/Counter-Petitioner The Davidian Seventh-day Adventist Association ("DSDAA"), by

and through its undersigned attorneys, will take the deposition upon oral examination of It Is

Written, Inc. ("It Is Written") through one or more officers or other representatives who shall be

designated to testify on It Is Written's behalf regarding all information known or reasonably

available to It Is Written with respect to the subject matter identified in Exhibit 1. DSDAA requests

that It Is Written provide written notice at least three (3) business days before the deposition of the

name(s) and employment position(s) of the individual(s) designated to testify on It Is Written's

behalf.

The deposition shall commence on May 2 0, 2 0 2, at 9:0 0am (Eastern Time) at The Westin

Chattanooga 801 Pine St. Chattanooga, TN 3740 2 The deposition will be taken before an officer

authorized to administer oaths and will be recorded by stenographic method.

Date: April 2 2, 2 0 2                     /s/ Theodore J. Chiacchio

Theodore J. Chiacchio
**Chiacchio IP, LLC**
Illinois State Bar No. 63 3 2547
3 07 North Michigan Avenue, Suite 2 01 1
Chicago, IL 60601
Tel: (312) 815-2 384
Email: tchiacchio@chiacchioip.com

## EXHIBIT 1 TO SCHEDULE A

### DEFINITIONS

1.     As used herein, "It Is Written" shall mean It Is Written, Inc. and all related or affiliated business entities including, without limitation, all parent companies, subsidiaries, sister entities, and successor entities.

2.     As used herein, "SDA Church" shall refer collectively to the General Conference Corporation of Seventh-day Adventists, the General Conference of Seventh-day Adventists ("GCSDA"), and all divisions, unions, and local conferences that are members of the GCSDA and/or are otherwise affiliated with GCSDA, as well as all congregations, missions, educational institutions, publishing houses, healthcare entities, and other entities who are members of a local conference or other sub-unit of GCSDA.

3.     The term "communication" includes, without limitation, communications by whatever means transmitted (i.e., whether oral, written, electronic, or other methods used), as well as any note, memorandum, correspondence, or other record thereof.

### TOPICS

1.     Communications between It Is Written and the SDA Church.

2.     Communications between It Is Written and the SDA Church regarding It Is Written's operations.

3.     Communications between It Is Written and the SDA Church regarding goods and/or services offered by It Is Written.

4.     Communications between It Is Written and the SDA Church regarding use of the name "Seventh-day Adventist" and/or any other name containing the term "Seventh-day Adventist."

5.    It Is Written's authorization to use the name "Seventh-day Adventist" and/or any other name containing the term "Seventh-day Adventist."

6.    Agreements between It Is Written and the SDA Church, whether written or oral.

7.    Whether and to what extent there exists any formal business relationship and/or affiliation between It Is Written and the SDA Church.

## SCHEDULE B

### INSTRUCTIONS

1.    All responses to these Requests for Production that fail or refuse fully to respond to the request on the ground of any claim of privilege or for any other reason shall provide the information required to support a claim of privilege under Fed. R. Civ. P. 26(b)(5).

2.    If, after conducting a reasonable investigation, a full answer cannot be provided for any request for the production of documents, state that such is the case and answer to the fullest extent possible, stating what responsive documents or information are available, what documents or information cannot be provided, why the documents or information are unavailable, and what efforts were made to obtain the unavailable documents or information.

3.    Documents from any single file should be produced in the same order as they were found in such files.

4.    If any documents responsive to these Requests have been destroyed, describe the content of such document, the location of any copies of such document, the date of such destruction, and the name of the person who ordered or authorized such destruction.

5.    Where an identified document has been lost, destroyed, deleted, overwritten, or purged, state the reasons for such, the names of the persons having any knowledge of such, and the names of the persons responsible for such.

6.    Where an identified document is not in your possession, custody, or control, state the names of the persons who have possession, custody, or control of such document. If such document was in your possession, custody, or control in the past, but is no longer in your possession, custody, or control, state what disposition was made of it, the reasons for such disposition, identify the persons having any knowledge of such disposition, and identify the

persons responsible for such disposition.

8. Whenever the singular is used, it will also be taken to include the plural and vice versa. Whenever a conjunctive is used, it will also be taken to include the disjunctive, and vice versa.

9. The terms "and," "or," and "and/or" will be construed in the conjunctive or the disjunctive, whichever makes the request more inclusive.

10. The term "all" shall include the word "any," and vice versa.

11. You must preserve and produce all information and documents in your possession, custody, or control that are responsive to these Requests.

## DEFINITIONS

1. As used herein, "It Is Written" shall mean It Is Written, Inc. and all related or affiliated business entities including, without limitation, all parent companies, subsidiaries, sister entities, and successor entities.

2. As used herein, "SDA Church" shall refer collectively to the General Conference Corporation of Seventh-day Adventists, the General Conference of Seventh-day Adventists ("GCSDA"), and all divisions, unions, and local conferences that are members of the GCSDA and/or are otherwise affiliated with GCSDA, as well as all congregations, missions, educational institutions, publishing houses, healthcare entities, and other entities who are members of a local conference or other sub-unit of GCSDA.

3. The term "Document(s)" means the documents and things within the broadest scope of the Federal Rules of Civil Procedure, including electronically stored information, data, source code, materials stored in any media, and any other information stored magnetically, optically, or electronically.

4.      The term "communication" includes, without limitation, communications by whatever means transmitted (i.e., whether oral, written, electronic, or other methods used), as well as any note, memorandum, correspondence, or other record thereof.

## REQUESTS

1.      All communications between It Is Written and the SDA Church.

2.      All communications between It Is Written and the SDA Church regarding It Is Written's operations.

3.      All communications between It Is Written and the SDA Church regarding goods and/or services offered by It Is Written.

4.      All communications between It Is Written and the SDA Church regarding use of the name "Seventh-day Adventist" and/or any other name containing the term "Seventh-day Adventist."

5.      All Documents related to It Is Written's authorization to use the name "Seventh-day Adventist" and/or any other name containing the term "Seventh-day Adventist."

6.      All agreements between It Is Written and the SDA Church, whether written or oral.

7.      Documents sufficient to show whether and to what extent there exists any formal business relationship and/or affiliation between It Is Written and the SDA Church.

# EXHIBIT D

| | | |
|---|---|---|
| **GENERAL CONFERENCE** | ) | |
| **CORPORATION OF SEVENTH-DAY** | ) | |
| **ADVENTISTS,** | ) | |
| | ) | |
|      **Petitioner/Counter-Respondent,** | ) | |
| | ) | **Cancellation Proceeding No. 92078546** |
| **v.** | ) | |
| | ) | |
| **THE DAVIDIAN SEVENTH-DAY** | ) | |
| **ADVENTIST ASSOCIATION,** | ) | |
| | ) | |
|      **Registrant/Counter-Petitioner.** | ) | |

## NON-PARTY IT IS WRITTEN, INC.'S OBJECTIONS AND RESPONSES TO THE DAVIDIAN SEVENTH-DAY ADVENTIST ASSOCIATION SUBPOENA

Registrant, The Davidian Seventh-day Adventist Association ("Davidian Association"), served a subpoena on It is Written, Inc. ("IIW") requesting IIW to produce an unreasonably broad scope of documents and to submit to an equally overly broad deposition on May 20, 2024. Here, IIW serves Davidian Association with its objections and responses to the subpoena. Because the subpoena subjects IIW to undue burden and expense contrary to what is mandated under Fed. R. Civ. P. 45(d)(1), IIW objects and Davidian Association should withdraw or substantially narrow its subpoena.

### RESPONSE TO SUBPOENA DUCES TECUM

### Preliminary Matter

IIW objects to each of the "Instructions" to the extent they deviate from the Federal Rules of Civil Procedure or otherwise require IIW to provide a narrative response rather than or in addition to producing documents.

1. **Communications and documents involving GCSDA (Request Nos. 1-4, 6-7)**

Request Nos. 1-4 and 6-7 are not proportional to the needs of the case at least because the facts to be discovered by these requests, that is, communications and documents relating to GCSDA (within reasonable limits as discussed below), are presumably available from Petitioner GCSDA itself, including by deposition, written discovery including interrogatories, and document production. The record does not disclose difficulty in efforts to discover this information from parties in the litigation, including no relevant motions to compel discovery. To the extent Request Nos. 1-4 and 6-7 seek discovery of information equally available from GCSDA, a party to the litigation, IIW objects because such requests put an undue burden on a non-party and are unreasonably cumulative and duplicative of discovery presumably already served in the case on existing parties. *See Genus Lifesciences v. Lannett Co.,* 2019 WL 7313047 (N.D. Cal. Dec. 30, 2019). The Davidian Association should demonstrate that it has exhausted all reasonable efforts to discover the requested information through the TTAB proceeding before burdening IIW with its requests.

2. **No reasonable time scope (Request Nos. 1-7)**

Request Nos. 1-7 (i.e., all the requests) unreasonably contain no stated time period within which IIW is being requested to search. As Davidian Association knows, GCSDA claims to have been using the marks in dispute for over a century. IIW has been in existence for decades. Without a reasonable time limit, all the Requests are unreasonably broad and unduly burdensome on their face, and clearly not proportional to the needs of this case.

3. **No reasonable topic limitations (Request Nos. 1-7)**

Request Nos. 1-7 (i.e., all the requests) unreasonably contain no clear limitations on the topics for which IIW is being requested to search, and IIW objects that these requests are overly

31916_00/24001/JGJ-4860-4827-6413_8

broad, unduly burdensome and not proportional to the needs of the case, and in some instances vague and confusing.  For example:

- <u>Request No. 1</u>, "All communications between It is Written and the SDA Church" is completely open-ended and contains no reasonable topic limitations at all, much less trademark-related limitations, and on its face would require IIW to needlessly search for and produce documents that are wholly irrelevant to the TTAB proceeding.

- <u>Request No. 2</u>, "All communications between It is Written and the SDA Church regarding It is Written's operations," is vague in failing to define what is meant by "operations" and is enormously overbroad in that it fails to connect any "operations" of IIW with any purported trademark rights of anyone.

- <u>Request No. 3</u>, "All communications between It is Written and the SDA Church regarding goods and/or services offered by It is Written," provides no reasonable limit on the kinds of goods or services the request seeks to discover and fails to tie any such communications with any purported trademark right(s).

- <u>Request No. 4</u>, "All communications between It is Written and the SDA Church regarding use of the name 'Seventh-day Adventist' and/or any other name containing the term 'Seventh-day Adventist'," is overly broad because it fails to limit itself to use of "Seventh-day Adventist" to distinguish a particular brand of goods or services.

- <u>Request No. 5</u>, "All documents related to It is Written's authorization to use the name 'Seventh-day Adventist' and/or any other name containing the term 'Seventh-day Adventist'," is vague and confusing in its use of the term

"authorization to use", e.g., does "authorization to use" mean the use is authorized by a third party, or to a third party, and does "use" mean use in any context, including in private conversations?

- Request No. 6, "All agreements between It is Written and the SDA Church, whether written or oral," is vague in failing to define or reasonably limit the types of "agreements" that are sought, and hopelessly overbroad in that it would require production of "agreements" that have nothing whatsoever to do with trademark usage or rights.

- Request No. 7, "Documents sufficient to show whether and to what extent there exists any formal business relationship and/or affiliation between It is Written and the SDA Church," is vague in that it fails to define what a "formal business relationship" would be or an "affiliation", and is not limited to trademark-related issues.

If Davidian Association will agree to significantly narrow and better define the documents requested, IIW will in good faith review Davidian Association's proposed changes.

## RESPONSE TO DEPOSITION SUBPOENA

IIW objects to the deposition subpoena because it was scheduled without IIW's input on a date, May 20, 2024, that is not available to IIW. Since the time of receipt of the subpoena by IIW, however, Davidian Association's attorney has agreed to reschedule the deposition to a mutually convenient date. IIW declines to provide a deponent on any topic until after document production is complete, as IIW will not agree to sit for more than one deposition. Because the deposition topics are identical to the document requests, IIW incorporates by reference its objections to the document requests. Finally, IIW intends to request a protective order, or a

4

written agreement with Davidian Association's counsel, to limit the time of the deposition to two (2) hours, and the scope of the deposition to topics that are reasonably at issue in the underlying litigation. As examples, IIW will not tolerate questioning such as who is considered to be a member of the SDA Church, or what beliefs does the SDA Church hold or any other questions that are not within the agreed-upon scope of topics.

If Davidian Association will agree to significantly narrow and better define the deposition topics, IIW will in good faith review Davidian Association's proposed changes. Assuming agreement can be reached on the scope of topics including securing a protective order or written agreement between counsel, IIW will propose dates when its witness will be available for deposition, and its counsel will agree to have the deposition take place at their law office.

Respectfully submitted,

CHAMBLISS, BAHNER & STOPHEL, P.C.


By: */s/ John G. Jackson*
     John G. Jackson, BPR 013840
     Jeffrey W. Maddux, BPR 027394
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
Telephone: (423) 756-3000
Facsimile: (423) 508-1246
jjackson@chamblisslaw.com
jmaddux@chamblisslaw.com

*Attorneys for Petitioner Chevy Chase G.I.*
*Investors, L.C.*

5

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the foregoing pleading upon the following individual(s) via email and/or United States Mail, postage prepaid, and correctly addressed as follows:

> Theodore J. Chiacchio
> CHIACCHIO IP, LLC
> 307 North Michigan Avenue, Suite 2011
> Chicago, Illinois 60601
> Email: tchiacchio@chiacchioip.com.
>
> *Attorney for Defendant*
>
> Bassam N. Ibrahim
> Bryce J. Maynard
> Buchanan Ingersoll & Rooney, PC
> 1737 King Street
> Alexandria, VA 22314-2727
>
> *Attorneys for Petitioner*

This 10th day of May, 2024.

> /s/ John G. Jackson
> John G. Jackson

# EXHIBIT E

# CHIACCHIO IP

WWW.CHIACCHIOIP.COM

Theodore J. Chiacchio
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601

May 15, 2024

Mr. John G. Jackson
Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

**Re:** ***General Conference Corporation of Seventh-day Adventists v. The Davidian Seventh-day Adventist Association***, **Cancellation Proceeding No. 92078546 (Trademark Trial and Appeal Board); Subpoena to It Is Written, Inc.**

Dear Mr. Jackson,

I write regarding It is Written, Inc.'s ("IIW") May 10, 2024, objections and responses to The Davidian Seventh-day Adventist Association's ("DSDAA") April 24, 2024 subpoena seeking deposition testimony and documents possessed by IIW relevant to the Parties' claims and defenses in the above-referenced Proceeding.

IIW argues that DSDAA has not sought the information outlined in the subpoena from General Conference Corporation of Seventh-day Adventists ("GCCSDA"). The communications that DSDAA seeks will be between IIW and General Conference of Seventh-day Adventists ("GCSDA"), its administrative sub-units (i.e., the divisions, unions, and local conferences falling under the umbrella of GCSDA), and denominational local congregations and businesses who are members of GCSDA. None of these entities are a party to this proceeding.

IIW objects to the DSDAA's Requests generally on that, according to IIW, they are overly broad, unduly burdensome, and not proportional to the needs of the case because they are not limited to a specific time period. DSDAA disagrees with IIW's blanket contention that by virtue of the fact that the Requests are not limited to a specific time period, they are necessarily objectionable. Nonetheless, in the interests of cooperation, DSDAA is agreeable to limiting the temporal scope of Request Nos. 2 and 3 to the previous five years.

1

IIW objects to Request No. 1 specifically on these same grounds. These objections are meritless. The only way for DSDAA to ensure that it is collecting all relevant documents bearing on the nature of the business relationship between IIW and GCSDA, its administrative sub-units, and the denominational entities is to review all such communications. Further, there is a Protective Order in place in the case that will prevent disclosure of information produced by IIW to third-parties and will also prevent use of the information for purposes other than the case. Nonetheless, in the interests of cooperation, if DSDAA and IIW are able to otherwise resolve their disagreements with regard to the proper scope of the Subpoena Requests, DSDAA will agree to withdraw Request No. 1.

IIW contends that Request No. 2 is vague and confusing in its use of the term "operations" and is also overly broad "in that it fails to connect any 'operations' of IIW with any purported trademark rights of anyone." As used in DSDAA's Request No. 2, communications regarding IIW's "operations" is intended to refer to matters related to quality control (if any) by any of the entities comprising the SDA Church with respect to goods and/or services offered by IIW and matters related to the nature and quality of the goods and/or services offered by IIW.

IIW contends that Request No. 3 is overly broad, unduly burdensome, and not proportional to the needs of the case because there are no limits placed on the goods and/or services referred to in the Request and the Request does not tie the goods/services to any particular trademark rights. The reason that the Request is not limited with respect to specific types of goods/services is because the SDA Church does not impose any limits with regard to the types of goods/service with which the SEVENTH-DAY ADVENTIST mark may be used.

Notwithstanding the above, if DSDAA and IIW can reach agreement that IIW will produce any documents within IIW's possession, custody, or control, regarding IIW's operations, then DSDAA will withdraw Request No. 3, as the communications identified in Request No. 2 regarding IIW's operations (if any exist) are most critical to the Proceeding.

IIW objects to Request No. 4, seeking communications between IIW and the SDA Church regarding use of any name containing "Seventh-day Adventist," is overly broad because it does not "distinguish a particular brand of goods or services." This objection lacks merit because, as discussed above, the SDA Church does not impose any limits with regard to the types of goods/services with which the SEVENTH-DAY ADVENTIST mark may be used.

IIW objects to Request No. 5 on the grounds that, according to IIW, the phrase "authorization to use" is vague and confusing. While DSDAA disagrees that this phrase is vague and confusing, in the interests of cooperation, DSDAA states that, as used in this Request, "authorization to use" refers to any authorization provided by GCSDA (including its administrative sub-units) to IIW to use the SEVENTH-DAY ADVENTIST mark or any other term containing "Seventh-day Adventist."

2

With regard to Request No. 6, IIW objects on the grounds that the term "agreements" is vague and that the Request is overbroad because it encompasses agreements that do not relate to trademark rights. While DSDAA disagrees with these objections, DSDAA agrees to limit the scope of this Request to agreements related to (i) use of the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase; (ii) quality control (if any) by any of the entities comprising the SDA Church with respect to goods and/or services offered by IIW; and/or (iii) the nature and quality of the goods and/or services offered by IIW.

With regard to Request No. 7, IIW objects that the Request is vague and confusing in its use of the phrase "formal business relationship." While admittedly this term may be interpreted in several different ways, it is telling that IIW has not attempted to ascribe a meaning to the term. For current purposes, "formal business relationship" may be defined as having overlapping ownership and/or management; having a parent/subsidiary or sister entity relationship; or having any other business relationship with one another where the terms of that relationship have been memorialized in a written agreement(s). IIW also contends that the Request is overly broad because, according to IIW, it "is not limited to trademark-related issues." This is inaccurate. The information sought by this Request, as drafted, is directly and highly relevant to the trademark issues in the Proceeding. Third-party use of "Seventh-day Adventist" impacts an assessment of the validity of the SEVENTH-DAY ADVENTIST mark as well as the scope of any alleged trademark rights in the mark.

DSDAA is agreeable to coordinating a mutually agreeable time for the deposition of IIW. DSDAA is also agreeable to discussing an appropriate maximum amount of record time for the deposition. As noted above, a Protective Order governs the treatment of confidential information produced in the case currently, including confidential information produced by third-parties such as IIW. DSDAA is nonetheless agreeable to discussing any remaining concerns that IIW may have related to its confidential information and working cooperatively to allay any concerns that IIW may have. DSDAA is, moreover, agreeable to the same narrowing amendments discussed above for the corresponding deposition topics set forth in DSDAA's subpoena.

On behalf of the Firm,

*Theodore J. Chiacchio*

Theodore J. Chiacchio

3

# EXHIBIT F

**From:** Jackson, John G. <JJackson@chamblisslaw.com>
**Sent on:** Tuesday, June 25, 2024 12:42:30 AM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**CC:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** Re: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Will respond tomorrow.

Get Outlook for Android

---

**From:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Sent:** Friday, June 21, 2024 9:10:17 PM
**To:** Jackson, John G. <JJackson@chamblisslaw.com>
**Cc:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Hi John:

I am following up further to my email below. Could you please let me know how your client intends to proceed?

Thank you in advance.

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601
P 312.815.2384 | C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee.  If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Theodore Chiacchio
**Sent:** Monday, June 17, 2024 11:43 AM
**To:** Jackson, John G. <JJackson@chamblisslaw.com>
**Cc:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>

**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

John:

To consolidate our communications into a single email chain, I have pasted in below my summary prepared shortly after our telephonic meet and confer on June 6 and sent to you at that time. We appear to remain far apart with regard to Request Nos. 2 and 3, which appear in red below in my summary of our call. As discussed, your client's twice annual reports are highly unlikely to address the issue of whether and to what extent the SDA Church exercises quality control oversight of IIW's goods/services offered under the SEVENTH-DAY ADVENTIST mark. Further, as indicated in my summary, the scope of Request Nos. 2 and 3 encompasses "communications regarding the nature and quality of the goods and/or services offered by IIW" and "documents sufficient to demonstrate the biblical, moral, doctrinal, and social philosophies and teachings of IIW, and the practices that IIW endorse or condone, and those that IIW does not." Please confirm that IIW will produce such documents.

With regard to Request No. 7, first, it is not clear to me how an org chart for IIW will address the business relationship between IIW and the SDA Church. If you feel as though the foundational documents referred to in your email will demonstrate the relationship between IIW and the SDA Church, then please do produce. I cannot say until I review those foundational documents whether they may satisfy IIW's obligations under Request No. 7. Second, it may well be that GCSDA leaders sit on IIW's Executive Committee and review and approve important decisions. IIW, however, is its own corporation. There must, therefore, be documentation showing the relationship between IIW and the North American Division if, as stated in your email, IIW is a wholly-owned subsidiary of the NAD. Please produce those documents.

**Summary of June 6, 2024, Meet and Confer Between The Davidian Seventh-day Adventist Association ("DSDAA") and It Is Written, Inc. ("IIW")**

- DSDAA agrees to withdraw Request No. 1 of DSDAA's subpoena to IIW.

- All requests can be limited to the past five years, with the exception of written agreements related to use of 'Seventh-day Adventist,' express agreements related to quality control by the SDA Church over IIW, and foundational documents/mission statements of IIW discussing the core principles of IIW.

- Request Nos. 2 and 3 can be narrowed and collapsed down to (i) communications related quality control (if any) or lack thereof by any of the entities comprising the SDA Church with respect to goods and/or services offered by IIW; and (ii) communications regarding the nature and quality of the goods and/or services offered by IIW. With regard to (ii), this is intended to encompass documents sufficient to demonstrate the biblical, moral, doctrinal, and social philosophies and teachings of IIW, and the practices that IIW endorse or condone, and those that IIW does not.

- Requests Nos. 4-7 in the subpoena can remain as is for now but we can continue to discuss if the responsive materials are voluminous.

- IIW will make a document production consistent with above. DSDAA will review the documents produced and continue to consider whether a deposition will be necessary.

- IIW is a sub-unit of the North American Division of GCSDA. They reach out to people perceived to be

in need but, according to IIW, they do so without mentioning the SDA Church/or without mention them much.

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601
P 312.815.2384 | C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee.  If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Jackson, John G. <JJackson@chamblisslaw.com>
**Sent:** Thursday, June 13, 2024 12:38 PM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Cc:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Theodore,

After reviewing with my client the proposed scope of the document subpoena, several points need to be made that will affect what we believe should be the reasonable scope of the subpoena.

First, IIW has its own trademarks such as "It is Written", which is owned by It Is Written, Inc., and which it uses in connection with offering its goods and services.  Since IIW's marks are not at issue in the TTAB proceeding, IIW declines to search specifically for documents relating to goods and services offered under IIW's own marks, but in good faith we will produce five years of twice annual reports of IIW's Executive Committee, as discussed, to illustrate the SDA Church's general oversight of IIW's goods and services.  We believe this offered production should satisfy Requests Nos. 2 and 3, as modified and clarified below.

Second, IIW is a wholly-owned part of the SDA Church. It is not legally or operationally independent in any way. All of its employees are employees of the SDA Church (technically, Adventist Media Center, Inc., a wholly-owned subsidiary of the North American Division of the SDA Church which is part of the General Conference of Seventh-day Adventists.) So, with IIW not having an independent structure, or independent governance, there just isn't any communication about formal business relationships or affiliations. The fact that "GCSDA" leaders sit on IIW's Executive Committee (similar to Board of Directors) and review and approve important decisions makes Request No. 7 seem unnecessary.  We believe producing an organizational chart plus any IIW foundational

documents that still exist should be sufficient to satisfy No. 7.

With all that said, we believe a reasonable scope consists of what is shown below, as amended. Please confirm and we will begin producing more documents in the near future.

Doc. Requests:
No. 1:        Withdrawn
No. 2 and 3:    Over the past 5 years, documents sufficient to show communications between IIW and SDA regarding general quality control or the lack thereof regarding goods and/or services offered by IIW, but not specifically as to any goods or services offered only under IIW's own marks
No. 4:        Over the past 5 years, communications between IIW and SDA regarding use by IIW of the name "Seventh-day Adventist" and/or any other name containing the term "Seventh-day Adventist"
No. 5:        Over the past 5 years, documents related to authorization provided by GCSDA (including its administrative sub-units) to IIW to use the SEVENTH-DAY ADVENTIST mark or any other term containing "Seventh-day Adventist"
No. 6:        Over the past 5 years, agreements between IIW and SDA relating to (i) use of the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase; (ii) quality control (if any) by any of the entities comprising the SDA Church with respect to goods and/or services offered by IIW under the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase ; and/or (iii) the nature and quality of the goods and/or services offered by IIW under the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase
No. 7:        Over the past 5 years, documents such as an organizational chart sufficient to show whether and to what extent there exists any formal business relationship and/or affiliation between IIW and SDA, except that representative foundational documents for IIW that are responsive to this Request are not time-limited

Deposition
Discussion is tabled pending your review of IIW's document production, as your client may not need a deposition.

**John G. Jackson**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0246
F (423) 508-1246
jjackson@chamblisslaw.com | www.chamblisslaw.com

 

**From:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Sent:** Thursday, June 6, 2024 5:55 PM
**To:** Jackson, John G. <JJackson@chamblisslaw.com>; Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

John:

We generally appear to be in agreement with regard to the take-aways from our call. However, kindly note the portion of my email related to Requests Nos. 2 and 3.

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601
P 312.815.2384 | C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee.  If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Jackson, John G. <JJackson@chamblisslaw.com>
**Sent:** Thursday, June 6, 2024 4:45 PM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>; Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Theodore,

The following is my attempt to capture our tentative agreement today regarding document search scope. Let me know if I've misdescribed anything.  "IIW" means "It is Written, Inc." and "SDA" means the "SDA Church".  We reserve the right to amend the below description/limits following discussion with our client.

Doc. Requests:
No. 1:          Withdrawn
No. 2 and 3:     Over the past 5 years, communications between IIW and SDA regarding quality control or the lack thereof regarding goods and/or services offered by IIW
No. 4:          Over the past 5 years, communications between IIW and SDA regarding use by IIW of the name "Seventh-day Adventist" and/or any other name containing the term "Seventh-day Adventist"
No. 5:          Over the past 5 years, documents related to authorization provided by GCSDA (including its administrative sub-units) to IIW to use the SEVENTH-DAY ADVENTIST mark or any other term

containing "Seventh-day Adventist"
No. 6:             Over the past 5 years, agreements between IIW and SDA relating to (i) use of the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase; (ii) quality control (if any) by any of the entities comprising the SDA Church with respect to goods and/or services offered by IIW; and/or (iii) the nature and quality of the goods and/or services offered by IIW
No. 7:             Over the past 5 years, documents sufficient to show whether and to what extent there exists any formal business relationship and/or affiliation between IIW and SDA, except that representative foundational documents for IIW that are responsive to this Request are not time-limited

Deposition
Discussion is tabled pending your review of IIW's document production, as your client may not need a deposition.

I'll send the sample catalogue and magazine in a separate email.

**John G. Jackson**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0246
F (423) 508-1246
jjackson@chamblisslaw.com I www.chamblisslaw.com

 

**From:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Sent:** Thursday, June 6, 2024 4:32 PM
**To:** Jackson, John G. <JJackson@chamblisslaw.com>; Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

John:

I tried calling. Please give me a call at 312-919-2719. Thank you.

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601

P 312.815.2384 I C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee.  If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Jackson, John G. <JJackson@chamblisslaw.com>
**Sent:** Thursday, June 6, 2024 9:30 AM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>; Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Yes, that would work.

**John G. Jackson**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0246
F (423) 508-1246
jjackson@chamblisslaw.com I www.chamblisslaw.com

 

**From:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Sent:** Thursday, June 6, 2024 10:28 AM
**To:** Jackson, John G. <JJackson@chamblisslaw.com>; Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Will 4:30 pm, Eastern today work with your schedule?

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011

Chicago, IL 60601
P 312.815.2384 I C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Jackson, John G. <JJackson@chamblisslaw.com>
**Sent:** Thursday, June 6, 2024 9:27 AM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>; Maddux, Jeffrey W.
<JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

We are on Eastern time, so it would be 5:30 p.m. which isn't convenient today. Could get on a call earlier today or tomorrow morning.

**John G. Jackson**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0246
F (423) 508-1246
jjackson@chamblisslaw.com I www.chamblisslaw.com

 

**From:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Sent:** Thursday, June 6, 2024 10:08 AM
**To:** Jackson, John G. <JJackson@chamblisslaw.com>; Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

John:

Do you have availability for a call at 4:30 pm (CDT) today?

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601
P 312.815.2384 | C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee.  If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Jackson, John G. <JJackson@chamblisslaw.com>
**Sent:** Wednesday, June 5, 2024 3:35 PM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>; Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Mr. Chiacchio:

Please confirm whether and when you are available for a call tomorrow to discuss the issued subpoena.

Regards,
John
**John G. Jackson**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0246
F (423) 508-1246
jjackson@chamblisslaw.com | www.chamblisslaw.com

 

**From:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Sent:** Tuesday, June 4, 2024 8:46 AM
**To:** Jackson, John G. <JJackson@chamblisslaw.com>; Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Case 1:24-mc-00040-CLC-SKL   Document 1-1   Filed 08/21/24   Page 66 of 88   PageID #: 82

Sounds good John.

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601
P 312.815.2384 | C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Jackson, John G. <JJackson@chamblisslaw.com>
**Sent:** Monday, June 3, 2024 4:17 PM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>; Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Message received. We are reviewing some information from our client and have a meeting scheduled with our client contact on Wednesday. Following that, we will either email or call you with our response to your letter.

Regards,
John
**John G. Jackson**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0246
F (423) 508-1246
jjackson@chamblisslaw.com | www.chamblisslaw.com

 

**From:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Sent:** Friday, May 31, 2024 8:04 PM
**To:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>; Jackson, John G. <JJackson@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546
**Importance:** High

Jeffrey and John:

It is imperative that I receive IIW's positions with regard to matters addressed in my attached correspondence as soon as possible. While DSDAA would like to work through your client's objections cooperatively, DSDAA will need to figure out very soon whether motion practice will prove necessary. We can discuss over the phone as well if you believe that to do so would be productive.

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601
P 312.815.2384 | C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Sent:** Monday, May 20, 2024 12:09 PM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>; Jackson, John G. <JJackson@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Thanks Theodore.

I know John returns on Wednesday, but I will review this with the client and be in touch.

**Jeffrey W. Maddux**
**Licensed in Tennessee & Georgia**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0296
F (423) 508-1296
jmaddux@chamblisslaw.com I www.chamblisslaw.com

 

**From:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Sent:** Wednesday, May 15, 2024 8:17 PM
**To:** Jackson, John G. <JJackson@chamblisslaw.com>
**Cc:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Dear Mr. Jackson:

Please see the attached correspondence.

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601
P 312.815.2384 I C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Jackson, John G. <JJackson@chamblisslaw.com>
**Sent:** Friday, May 10, 2024 1:20 PM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Cc:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Thank you. We will check our calendars for a deposition date, but first will need to address with you a number of issues related to the scope of the requests/topics. Please see our client's objections, attached. I will be out of the country for vacation starting tomorrow, returning on May 22. In the meantime, my partner Jeffrey Maddux, who is copied, can respond to any issues.

**John G. Jackson**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0246
F (423) 508-1246
jjackson@chamblisslaw.com | www.chamblisslaw.com

 

**From:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Sent:** Friday, May 10, 2024 12:59 AM
**To:** Jackson, John G. <JJackson@chamblisslaw.com>
**Cc:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** RE: General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

[EXTERNAL EMAIL]

Mr. Jackson:

Thank you for your email. We can certainly work cooperatively to set a different date for the deposition that is convenient for both my Firm and yourself and your client. Please provide additional dates that work with schedules and I will check my availability and get back to you.

Best,

**Theodore J. Chiacchio**
*Registered Patent Attorney*
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601
P 312.815.2384 | C 312.919.2719
www.chiacchioip.com
https://www.linkedin.com/in/theodore-chiacchio-924838120/

The information contained in this communication is confidential, may be attorney-client privileged, and is intended only for the use of the addressee. If you believe that you may have received this message in error, please delete the message and notify the sender.

**From:** Jackson, John G. <JJackson@chamblisslaw.com>

Case 1:24-mc-00040-CLC-SKL   Document 1-1   Filed 08/21/24   Page 70 of 88   PageID #: 86

**Sent:** Thursday, May 9, 2024 2:19 PM
**To:** Theodore Chiacchio <tchiacchio@chiacchioip.com>
**Cc:** Maddux, Jeffrey W. <JMaddux@chamblisslaw.com>
**Subject:** General Conference Corporation of Seventh-Day Adventists v. The Davidian Seventh-Day Adventist Assn, TTAB No. 92078546

Dear Mr. Chiacchio:

This law firm was just retained to represent It is Written, Inc. ("IIW") in connection with a combined document and deposition subpoena you served on it in connection with the captioned matter pending in the TTAB. The purpose of this email is two-fold: 1) to introduce ourselves as counsel for IIW, and 2) to advise that the noticed deposition date of May 20 does not work for us and will need to be rescheduled. We agree to work cooperatively with you to set another deposition date that is convenient to all concerned, pending any discussion on the scope of the deposition topics. **Please advise ASAP that you agree to take the May 20 deposition date off the table.** We expect to provide a written response to the subpoena by early next week.

Regards,
**John G. Jackson**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0246
F (423) 508-1246
jjackson@chamblisslaw.com | www.chamblisslaw.com

 

This transmission is confidential and may be privileged or proprietary. If you are not the intended recipient, you are not authorized to use the information in this transmission in any way. Please inform the sender immediately if you have received this transmission in error and permanently delete and destroy the original and any copies of the information.

Personal messages and attachments express the views of the sender and are not to be attributed to Chambliss, Bahner & Stophel, P.C.

Case 1:24-mc-00040-CLC-SKL   Document 1-1   Filed 08/21/24   Page 71 of 88   PageID #: 87

# EXHIBIT G



**Chambliss, Bahner & Stophel, P.C.**
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
chamblisslaw.com

**John G. Jackson**
Direct Dial (423) 757-0246
Direct Fax (423) 508-1246
jjackson@chamblisslaw.com
Also Licensed in Georgia

June 25, 2024

Via Email: tchiacchio@chiacchioip.com

Theodore J. Chiacchio
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601

Re:     General Conference Corporation of Seventh-day Adventists v. The Davidian Seventh-day
Adventist Assn

Dear Theodore:

Responding to your email dated June 17, 2024, we reiterate that my client, It is Written ("IIW"),
declines to search for or produce documents "sufficient to demonstrate the Biblical, moral, doctrinal,
and social philosophies and teachings of IIW, and the practices that IIW endorses or condones, and
those that IIW does not". IIW's position is backed by solid case law in this Circuit.

In *General Conference of Seventh-Day Adventists v. McGill*, 617 F.3d 402, 408 (6th Cir. 2010), a
trademark infringement case with issues similar to those being asserted in the Trademark Trial Appeal
Board in the underlying litigation in this matter, the Plaintiff there argued that the Court had a duty to
resolve underlying doctrinal disputes including, "to wit, who are the 'true' Seventh-day Adventists."
Drawing on precedent from the United States Supreme Court, the Sixth Circuit held that courts may
apply neutral principles of law to resolve church property disputes. In *McGill*, the Sixth Circuit held
that "this case does not require us to decide any issue of church doctrine. Both the Plaintiffs and
McGill believe that the second coming of Christ is imminent and that the Sabbath should be celebrated
on Saturday. Their dispute concerns whether McGill can use the Plaintiff's marks to promote his
church's services and materials. Plainly, the case can be resolved using the neutral principles of
trademark law." 617 F.3d at 408. Citing to the Ninth Circuit case of *Maktab Tarighe Oveyssi Shah
Maghsoudi, Inc. v. Kianfar,* 179 F.3d 1244, 1246-48 (9th Cir. 1999), the Sixth Circuit quoted with
approval that "the district court can apply the regular factors that courts employ to determine
infringement" and that "[t]he Defendants can raise neutral defenses, such as prior use of the marks."
The Sixth Circuit then said, "Like *Maktab*, the instant case can be resolved based on trademark law,
without addressing any doctrinal issues. Trademark law will not turn on whether the Plaintiff's
members or McGill and his congregants are the true believers." 617 F.3d at 408.

In *McGill*, the Sixth Circuit rejected the Defendant's invitation to create an exception to the above rule where the plaintiff argued that "intellectual religious property in the application of neutral principles could, in effect, … decide a doctrinal dispute and … deprive one party the right to the free exercise of its religion." *Id.* The Sixth Circuit replied flatly, "We decline the invitation." In the course of its response, the Court made reference to *Jones v. Wolf*, 443 U.S. 595, 604 (1979) which had held that the courts may apply "neutral principles of law" to resolve church property disputes. The Sixth Circuit concluded, "It would be a perversion of the case law, and contrary to the *Jones* line of cases, now to carve out an exception to the neutral principles approach in property cases." 617 F.3d at 409.

Based on this clear precedent from the Sixth Circuit, IIW declines to search for or produce communications or documents related to "biblical, moral, doctrinal, and social philosophies and teachings, and the practices that IIW endorses or condones, and those that IIW does not." Relatedly, IIW will not agree to allow any company witness in a deposition to be questioned about these topics.

Please confirm your agreement not to pursue the topics listed above, and we will proceed to search for and produce documents within a reasonable scope. For the avoidance of doubt, we view the reasonable scope to comprise the following:

<u>Doc. Requests:</u>

<u>No. 1</u>:            Withdrawn

<u>Nos. 2 and 3</u>:     Over the past 5 years, documents sufficient to show communications between IIW and SDA regarding general quality control or the lack thereof regarding goods and/or services offered by IIW, but not specifically as to any goods or services offered only under IIW's own marks

<u>No. 4</u>:            Over the past 5 years, communications between IIW and SDA regarding use by IIW of the name "Seventh-day Adventist" and/or any other name containing the term "Seventh-day Adventist" in connection with goods and services

<u>No. 5</u>:            Over the past 5 years, documents related to authorization provided by GCSDA (including its administrative sub-units) to IIW to use the SEVENTH-DAY ADVENTIST mark or any other term containing "Seventh-day Adventist"

<u>No. 6</u>:            Over the past 5 years, agreements between IIW and SDA relating to (i) use of the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase; (ii) quality control (if any) by any of the entities comprising the SDA Church with respect to goods and/or services offered by IIW under the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase ; and/or (iii) the nature and quality of the goods and/or services offered by IIW under the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase

<u>No. 7</u>:            Over the past 5 years, documents such as an organizational chart sufficient to show whether and to what extent there exists any formal business relationship and/or affiliation between

Theodore J. Chiacchio
June 25, 2024
Page 3


IIW and SDA, except that representative foundational documents for IIW that are responsive to this Request are not time-limited

<u>Deposition</u>

Discussion is tabled pending your review of IIW's document production, as your client may not need a deposition.

Very truly yours,

*John G. Jackson*

John G. Jackson

JGJ/tmm

cc:     Jeffrey W. Maddux, Esq.

# EXHIBIT H

# Chiacchio IP

Theodore J. Chiacchio
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 806
Chicago, IL 60601

July 1, 2024

Mr. John G. Jackson
Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

**Re: *General Conference Corporation of Seventh-day Adventists v. The Davidian Seventh-day Adventist Association*, Cancellation Proceeding No. 92078546 (Trademark Trial and Appeal Board); Subpoena to It Is Written, Inc.**

Dear Mr. Jackson,

I write on behalf of The Davidian Seventh-day Adventist Association ("DSDAA") in response to your June 25, 2024, correspondence sent on behalf of It Is Written, Inc. ("IIW") regarding matters concerning DSDAA's subpoenas directed to IIW, which subpoenas were served in connection with the above-referenced Board proceeding.

Your letter states that "IIW declines to search for or produce communications or documents related to 'biblical, moral, doctrinal, and social philosophies and teachings, and the practices that IIW endorses or condones, and those that IIW does not. Relatedly, IIW will not agree to allow any company witness in a deposition to be questioned about these topics." (Ltr. at 2). The purported basis for this position according to your letter is the "neutral principles of law approach." (*See id.* at 1-2). Your letter cites and discusses *General Conf. Corp. v. McGill*, 617 F.3d 402 (6th Cir. 2010) and *Maktab Tarighe Oveyssi Shah Maghsoudi, Inc. v. Kianfar*, 179 F.3d 1244, 1250 (9th Cir. 1999). (*See id.*) This choice of precedent to rely upon is curious considering that in both cases the Court held that the "neutral principles of law approach" did not prevent adjudication of the underlying dispute.

In *McGill*, the Court, holding that it had subject matter jurisdiction, rejected Appellant's argument that deciding Plaintiffs' trademark infringement claim would require the Court to resolve doctrinal disputes. *McGill*, 617 F.3d at 408. In so ruling, the Court held as follows: "The[ Parties'] dispute concerns whether McGill can use the plaintiffs' marks to promote his church's services and materials. Plainly, the case can be resolved using the neutral principles of trademark law." *Id.* Likewise, in *Maktab*, the Court held that the First Amendment did not prevent adjudication of a church property dispute governed by state property law because the dispute could be decided based upon "neutral secular principles." *Maktab*, 179 F.3d at 1249. The *Jones* case also cited in your letter likewise affirmed the validity of the neutral principles of law doctrine. *See Jones v. Wolf*, 443 U.S. 595, 606 (1979). Thus, far from supporting IIW's refusal to comply with DSDAA's subpoena, the case law cited in your letter requires compliance here.

Other courts have likewise held that, pursuant to the neutral principles of law approach, Lanham Act disputes, including specifically disputes regarding the validity of a trademark, may properly be adjudicated without impinging upon the free exercise of religion. *See, e.g.*, *Unrantia Found. v. Maaherra*, 895 F. Supp. 1329, 1332 (D. Ariz. 1995) (holding that trademark validity could be determined by applying neutral principles of law); *Holy Spirit Assoc. for the Unification of World Christianity v. World Peace & Unification Sanctuary*, 3:18-CV-1508, 2019 U.S. Dist. Lexis 121744, at *24 (M.D. Pa. Jul. 22, 2019) (same).

The reason that DSDAA seeks information related to the "biblical, moral, doctrinal, and social philosophies and teachings, and the practices that IIW endorses or condones, and those that IIW does not" is not to use the information in a way that would "require [the Board] to decide any issue of church doctrine." *McGill*, 617 F.3d at 408. Rather, the relevance of the requested information to the Board proceeding is that such information will support the undeniable proposition that a number of IIW's philosophies, teachings, and practices are directly contrary to those held by the General Conference of Seventh-day Adventists and other denominational entities. Such information bears directly on the validity of the purported trademarks SEVENTH-DAY ADVENTIST and GENERAL CONFERENCE OF SEVENTH-DAY ADVENTISTS. Neither the Board nor any other adjudicative tribunal will be asked to decide a doctrinal issue.

Separately, DSDAA further notes that information regarding IIW's social philosophies does not implicate church doctrine at all. Additionally, much information related to practices that IIW endorses or condones, and those that IIW does not, also does not implicate church doctrine.

Case 1:24-mc-00040-CLC-SKL   Document 1-1   Filed 08/21/24   Page 78 of 88   PageID #: 94

# Chiacchio IP

While the Parties appear to be at an impasse and motion practice may be unavoidable at this point, in a final effort to attempt to avoid having to involve the courts, please confirm IIW's final position regarding the matters discussed above.

On behalf of the Firm,

*Theodore J. Chiacchio*

Theodore J. Chiacchio

3

# EXHIBIT I



**Chambliss, Bahner & Stophel, P.C.**
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
chamblisslaw.com

**John G. Jackson**
Direct Dial (423) 757-0246
Direct Fax (423) 508-1246
jjackson@chamblisslaw.com
Also Licensed in Georgia

July 5, 2024

Via Email: tchiacchio@chiacchioip.com

Theodore J. Chiacchio
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601

Re:     General Conference Corporation of Seventh-day Adventists v.
        The Davidian Seventh-day Adventist Assn

Dear Theodore:

This letter responds to yours dated July 1, 2024. I would point out that your letter fails to respond to the scope of document requests and deposition topics outlined in our June 25, 2024 letter, which I revisit below.

First, however, we respond to your main argument: that, despite what the "neutral principles of law approach" actually says, your client has the right to demand that my client, It Is Written, Inc. ("IIW") provide you with documents and testimony relating to "biblical, moral, doctrinal, and social philosophies and teachings, and the practices that IIW endorses or condones, and those that IIW does not." This is fundamentally incorrect, as the cases you cite in your July 1, 2024 letter themselves attest. For example, the Court in *Holy Spirit Assn for Unification of World Christianity v. World Peace and Unification Sanctuary, Inc.*, 2019 WL 3297469, *8 (M.D. Pa. July 22, 2019) quotes with approval from *Jones v. Wolfe*, 443 U.S. 595, 602 (1979), which in part held: "the First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice" and such courts are to "defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization." *Id.* at *8. *Holy Spirit* quotes from *Askew v. Trustees of Gen. Assy of Church of the Lord Jesus Christ of the Apostolic Faith, Inc.*, 684 F. 3d 413, 418-419 (3rd Cir. 2012), which in pertinent part held, "Civil courts encroach on the autonomy of religious institutions when they inquire into ecclesiastical law and governance. The non-entanglement principle, anchored in First Amendment values, thus requires that civil courts defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization." *Id.* at 418-419.

Here, there is no legal basis to require IIW to search for or produce documents, or to present a witness for examination, relating to purely religious issues such as "biblical, moral, doctrinal, and social philosophies and teachings, and...practices" and IIW declines to do so.

Second, your purported justification for this request, that "such information will support the undeniable proposition that a number of IIW's philosophies, teachings and practices are directly contrary to those held by the General Conference…[and that] [s]uch information bears directly on the validity of the purported trademarks…", if compelled from IIW would violate the "non-entanglement" approach defined above.  My client does not use the trademarks at issue, as we have repeatedly informed you.  If my client is not using the marks, then the nature of the services it offers cannot possibly be relevant to the issues in your case, plain and simple.

IIW's position has not changed since our June 25, 2024 letter, to wit:

IIW declines to search for or produce communications or documents related to "biblical, moral, doctrinal, and social philosophies and teachings, and the practices that IIW endorses or condones, and those that IIW does not."  Relatedly, IIW will not agree to allow any company witness in a deposition to be questioned about these topics.

We view the reasonable scope of discovery requested under the subpoena to comprise the following:

Doc. Requests:

No. 1:                    Withdrawn

Nos. 2 and 3:        Over the past 5 years, documents sufficient to show communications between IIW and SDA regarding general quality control or the lack thereof regarding goods and/or services offered by IIW, but not specifically as to any goods or services offered only under IIW's own marks

No. 4:                    Over the past 5 years, communications between IIW and SDA regarding use by IIW of the name "Seventh-day Adventist" and/or any other name containing the term "Seventh-day Adventist" in connection with goods and services

No. 5:                    Over the past 5 years, documents related to authorization provided by GCSDA or GCCSDA (including its administrative sub-units) to IIW to use the SEVENTH-DAY ADVENTIST mark or any other term containing "Seventh-day Adventist"

No. 6:                    Over the past 5 years, agreements between IIW and GCSDA/GCCSDA relating to (i) use of the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase; (ii) quality control (if any) by any of the entities comprising GCSDA/GCCSDA with respect to goods and/or services offered by IIW under the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase ; and/or (iii) the nature and quality of the goods and/or services offered by IIW under the term SEVENTH-DAY ADVENTIST, whether alone or as part of a larger term or phrase

No. 7:                    Over the past 5 years, documents such as an organizational chart sufficient to show whether and to what extent there exists any formal business relationship and/or affiliation between

IIW and GCSDA/GCCSDA, including the North American Division, except that representative foundational documents for IIW that are responsive to this Request are not time-limited

Deposition

Discussion is tabled pending your review of IIW's document production, as your client may not need a deposition.

Very truly yours,

John G. Jackson

JGJ/tmm

cc:     Jeffrey W. Maddux, Esq.

# EXHIBIT J

# Chiacchio IP

WWW.CHIACCHIOIP.COM

Theodore J. Chiacchio
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 806
Chicago, IL 60601

July 9, 2024

Mr. John G. Jackson
Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

**Re:** ***General Conference Corporation of Seventh-day Adventists v. The Davidian Seventh-day Adventist Association***, **Cancellation Proceeding No. 92078546 (Trademark Trial and Appeal Board); Subpoena to It Is Written, Inc.**

Dear Mr. Jackson,

I write on behalf of The Davidian Seventh-day Adventist Association ("DSDAA") in response to your July 5, 2024, correspondence sent on behalf of It Is Written, Inc. ("IIW") regarding matters concerning DSDAA's subpoenas directed to IIW, which subpoenas were served in connection with the above-referenced Board proceeding.

First, your letter incorrectly asserts that my July 1, 2024, letter to you "fails to respond to the scope of document requests and deposition topics outlined in our June 25, 2024 letter...." (July 5, 2024, letter from J. Jackson to T. Chiacchio at 1). The Parties have been conferring regarding the scope of DSDAA's discovery requests to IIW continuously for almost two months now. It is abundantly clear from my communications to you that DSDAA does not intend to further narrow the scope of DSDAA's discovery requests beyond the substantial narrowing that DSDAA has already agreed to in the interests of cooperation. The narrowed requests/deposition topics that DSDAA has agreed to are set forth both in my June 6 and my June 17, 2024, email correspondence to you.

# Chiacchio IP

With regard to the "natural principles of law approach" and other related matters discussed in your July 5 letter, DSDAA stands by the positions set forth in my July 1, 2024, correspondence to you discussing such matters in detail.

It appears that the Parties have reached an impasse with respect to documents and testimony sufficient to demonstrate the biblical, moral, doctrinal, and social philosophies and teachings of IIW, and the practices that IIW endorses or condones, and those that IIW does not. As a final effort to avoid motion practice, please let me know if IIW would be agreeable to confining the scope of such discovery to the deposition; i.e., if DSDAA were to agree, strictly in the interests of cooperation, to forego further pursuing the associated documentary evidence.

On behalf of the Firm,

*Theodore J. Chiacchio*

Theodore J. Chiacchio

# EXHIBIT K



**Chambliss, Bahner & Stophel, P.C.**
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450
chamblisslaw.com

**John G. Jackson**
Direct Dial (423) 757-0246
Direct Fax (423) 508-1246
jjackson@chamblisslaw.com
Also Licensed in Georgia

July 11, 2024

Via Email: tchiacchio@chiacchioip.com

Theodore J. Chiacchio
Chiacchio IP, LLC
307 North Michigan Avenue, Suite 2011
Chicago, IL 60601

Re: *General Conference Corporation of Seventh-day Adventists v. The Davidian Seventh-day Adventist Assn* – Response to your letter of July 9, 2024

Dear Theodore:

In the last paragraph of your July 9, 2024 letter, you proposed that your client would forego having IIW produce documents if IIW were to provide a witness for deposition who would be subject to questioning that involves "biblical, moral, doctrinal, and social philosophies and teachings of IIW, and the practices that IIW endorses or condones, and those that IIW does not." We have considered your offer and respectfully decline. There is no legal basis to require IIW to produce documents or a witness in relation to the above-referenced doctrinal/theological subject matter.

We reiterate that the proper scope of discovery under your subpoena is outlined in our letter dated July 5, 2024. Before we search for and produce more documents, we need to have an understanding about scope. Please confirm that your client will refrain from insisting that IIW produce documents or a witness to testify concerning the "biblical, moral, doctrinal, and social philosophies and teachings of IIW, and the practices that IIW endorses or condones, and those that IIW does not."

Very truly yours,

*John G. Jackson*

John G. Jackson

JGJ/tmm

cc:    Jeffrey Maddux